**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **C & J ASSOCIATES PEST CONTROL,** *et al.*, | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **CIVIL ACTION NO.:** |
| **v.** | ) | **2:06-CV-884-MEF** |
| | ) | |
| **BOB RILEY,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

Defendants Guardian Pest Service, Inc., d/b/a Knox Pest Control ("Knox"), and Linda Shelton (collectively, "Knox and Shelton"), submit the following memorandum of law in support of their motion to dismiss pursuant to Rule 12(b)(6) of the *Federal Rules of Civil Procedure*.

## INTRODUCTION

Plaintiff asserts seven counts against Knox and Shelton: Count One (42 U.S.C. § 1981), Count Two (42 U.S.C. § 1983), Count Three (42 U.S.C. § 1985), Count Four (42 U.S.C. § 1986), Count Five (First Amendment retaliation), Count Six (Violation of Alabama Competitive Bid Law) and Count Seven (Intentional interference with business relations).

Plaintiff's Complaint, the gravamen of which alleges that the defendants conspired to deprive him of the ability to make and enforce a contract with the Alabama Department of Mental Health and Mental Retardation ("Mental Health Department") for the performance of pest control services for racially discrimination reasons, is not Plaintiff's first foray into civil rights litigation. In fact, in February 2005, Plaintiff filed a similar action in the United States District Court for the Northern District of Alabama, styled *C & J Associates Pest Control, et al.*

*v. Jefferson County Board of Education, et al.*, Civil Action No. CV-05-PWG-0442-S, alleging discriminatory conduct by the Jefferson County Board of Education and various government officials in the award of certain pest control contracts.[1] Knox, who received some of the pest control contracts in that instance, was also a defendant in that action. Knox filed a motion to dismiss, alleging that Plaintiff had failed to plead any facts which would state a claim against it under the various federal civil rights statutes pleaded by Plaintiff. The court granted Knox's motion to dismiss, and Plaintiff's claims were dismissed with prejudice. *See* Magistrate Judge's Findings and Recommendation attached as Exhibit "A." The result in the Northern District litigation should be the result here, as Plaintiff's claims in this action are similarly deficient.

## STANDARD OF REVIEW

At the outset, Knox and Shelton acknowledge that, in considering a motion to dismiss, this Court accepts "as true the facts stated in the complaint and all reasonable inferences therefrom." *Jackson v. Okaloosa County, Fla.*, 21 F.3d 1531, 1534 (11th Cir. 1994). "In considering a motion to dismiss under *Federal Rule of Civil Procedure* 12(b)(6), the averments of the complaint should be construed in the light most favorable to the plaintiff." *Cannon v. Macon County*, 1 F.3d 1558, 1565 (11th Cir. 1993).

---

[1]     In addition to the *C & J Associates Pest Control, et al. v. Jefferson County Board of Education, et al.* case, Plaintiff has within the last two years instituted at least three other actions for alleged discriminatory conduct by various parties in the award of pest control contracts. These actions include: *Duncan v. Hornsby, et al.*, Civil Action No. 2:05-00557-WHA-DRB (M.D. Ala. 2005) (civil rights action against Alabama Department of Transportation and various government officials for allegedly favoring white vendor, Cook's Pest Control, in award of pest control contract); *C & J Associates Pest Control, et al. v. Thomas, et al.,* Civil Action No. 2:05-cv-01358-RRA (N.D. Ala. 2005) (civil rights action against Fairfield Housing Authority and its Executive Director for allegedly favoring white vendor, Cook's Pest Control, in award of pest control contract); *C & J Associates Pest Control, et al. v. McMullen, et al.*, Civil Action No. 2:05-cv-02179-HGD (N.D. Ala. 2005) (civil rights action against Director of Purchasing for Birmingham Public School System for allegedly favoring white vendor, Orkin Pest Control, in award of pest control contract).

However, courts have found limits to the liberality of the Rule 12(b)(6) standard.  Courts have often noted that a plaintiff's vague and conclusory allegations, unsupported by specific factual allegations sufficient to raise an inference of purposeful discrimination and/or conspiracy, do not satisfy the fundamental pleading burden under Rule 12(b)(6).  The plaintiff's burden to plead specific factual allegations was aptly summarized by the U.S. District Court for the District of Kansas:

> The court accepts as true all well-pleaded facts, as distinguished from conclusory allegations, and all reasonable inferences from those facts are viewed in favor of the plaintiff. . . . The liberal construction of the plaintiff's complaint, however, does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based. Conclusory allegations without supporting factual averments are insufficient to state a claim on which relief may be based.

*McCormick v. City of Lawrence, Kansas*, 253 F. Supp. 2d 1156, 1162 (D. Kan. 2003); *see also, e.g., Koch v. Yunich*, 533 F.2d 80, 85 (2nd Cir. 1976) ("Complaints relying on the civil rights statutes are plainly insufficient unless they contain some specific allegations of fact indicating a deprivation of civil rights, rather than state simple conclusions"); *Baltimore-Clark v. Kinko's Inc.*, 270 F. Supp. 2d 695, 698 (D. Md. 2003) ("The court need not, however, accept unsupported legal conclusions . . . , legal conclusions couched as factual allegations . . . , or conclusory factual allegations devoid of reference to any actual events"); *Garg v. Albany Industrial Development Agency*, 899 F. Supp. 961, 967 (N.D.N.Y. 1995) ("In order to survive a motion to dismiss his § 1981 claim, a plaintiff must allege with specificity facts sufficient to raise a plausible inference that the defendant purposefully discriminated against him because of plaintiff's race"); *Waldron v. Rotzler*, 862 F. Supp. 763, 768-69 (N.D.N.Y. 1994) ("Complaints based on civil rights statutes must include specific allegations of facts showing a violation of rights instead of a litany of general conclusions that shock but have no meaning. . . .  The key

question in examining the sufficiency of a claim based on § 1981 is whether the plaintiff as assembled specific facts adequate to show or raise a plausible inference that he was subjected to race-based discrimination").

Similarly, "[m]ere allegations of conspiracy are not sufficient to withstand a motion to dismiss." *Copus v. City of Edgerton*, 959 F. Supp. 1047, 1052 (W.D. Wis. 1997), *affirmed in part and reversed in part*, 151 F.3d 646; *see also McCormick, supra*, at 1204 ("To state a conspiracy claim under § 1983, a plaintiff must allege specific facts showing an agreement and concerted action amongst defendants"); *Schmitz v. Mars, Inc*., 261 F. Supp. 2d 1226, 1234 (D. Or. 2003) ("To state a claim under § 1985, Plaintiff must plead specific material facts that show the existence of a conspiracy"); *Sales v. Murray*, 862 F. Supp. 1511, 1517 (W.D. Va. 1994) ("The plaintiff must allege facts showing that the defendants shared a unity of purpose or common design to injure the plaintiff. Where the complaint makes only conclusory allegations of a conspiracy under § 1983 or § 1985 and fails to allege facts suggesting an agreement or meeting of the minds among the defendants, the court may properly dismiss the complaint"); *Theis v. Smit*h, 676 F. Supp. 874, 877 (N.D. Ill. 1988) ("In order to plead a § 1983 conspiracy between private persons and state officials, plaintiffs must allege an agreement to deprive them of their constitutional rights. Boilerplate allegations of such an agreement are insufficient").

Based on these standards of review, the Plaintiff has failed to allege viable causes of action against defendants Knox and Shelton. Accordingly, Knox and Shelton's motion to dismiss is due to be granted.

**ARGUMENT**

**Count One: 42 U.S.C. § 1981**

Plaintiff's Complaint fails to state a claim against Knox and Shelton under § 1981. Section 1981 guarantees to "[a]ll persons within the jurisdiction of the United States … the same right … to make and enforce contracts … as is enjoyed by white citizens. 42 U.S.C. § 1981(a).

The Complaint does not allege any acts or omissions by which Knox and Shelton are meant to have deprived Plaintiff of any right secured to him by § 1981. The Complaint does not allege any past or present contractual relationship between Plaintiff and Knox and/or Shelton; nor does the Complaint allege that Plaintiff ever attempted to "make or enforce" a contract with Knox and/or Shelton. The Complaint only alleges that "the Defendants knew that Plaintiff was more qualified than the other bidder and specifically Defendant Linda Shelton and Knox Pest Control because Plaintiff possessed a Lawns & Ornamental License …. [which] Defendant Barton [sic] and Knox Pest Control did not possess …."; that "Defendant Bresseler fail[ed] to disqualify Knox Pest Control at the bid opening for not submitting a current License/Permit as required by the bid specifications"; and that "Defendants Shelton, Knox Pest Control … were allowed to submit fraudulent documents stating that Trinidad J. Villegas permit/license were current after the bid opening."  *Compl*. ¶¶ 29, 34, 35.

Although the Complaint occupies thirteen pages of text, it does not allege a single act or omission by either Knox or Shelton from which it could be found or inferred that these Defendants had any involvement whatsoever in any supposed wrongs, whether real or imagined, against Plaintiff. The Complaint alleges, at most, that Knox and Shelton were business competitors of Plaintiff, and innocent bystanders to an apparent dispute between the Plaintiff and the Mental Health Department and certain state officials.

Because the Complaint fails to allege any specific and concrete facts giving rise to a cause of action under 42 U.S.C. § 1981 against Knox and Shelton, these Defendants respectfully move the Court to enter an order dismissing Count One with prejudice.

**Count Two: 42 U.S.C. § 1983**

42 U.S.C. § 1983 provides, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ….

(emphasis added).

Because § 1983 was enacted pursuant to Congress's power to enforce Section 5 of the Fourteenth Amendment, it does not regulate private conduct. *See Parratt v. Taylor*, 451 U.S. 527, 535 (1981) (ruling that a necessary element to a § 1983 action is that the defendant have acted under color of state law when the acts resulting in the constitutional deprivation were committed), *overruled on other grounds, Daniels v. Williams*, 474 U.S. 327, 330-31 (1986). Rather, § 1983 only prohibits discrimination by state entities or officers. *See id.* Because Knox and Shelton are purely private actors, they did not act "under color of state law."

As the Supreme Court has written, "like the state-action requirement of the Fourteenth Amendment, the under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *American Manufacturers Mutual Insurance Co. v. Sullivan*, 526 U.S. 40 (1999) (citations and internal quotation marks omitted). The Complaint does not allege any facts from which it could be found or inferred that Knox and/or Shelton acted in such concert or coordination with state officials that their purely private actions could be characterized as state action.

Because Knox and Shelton are purely private actors, they cannot be held liable under § 1983. Accordingly, these Defendants respectfully move the Court to enter an order dismissing Count Two with prejudice.

## Count Three: Conspiracy under 42 U.S.C. § 1985 and Count Four: 42 U.S.C. § 1986

As his third and fourth counts, Plaintiff accuses Knox and Shelton of engaging in a conspiracy with various state officials to deprive him of his civil rights, alleging violations of 42 U.S.C. §§ 1985, 1986. These claims, too, are due to be dismissed with prejudice.

Plaintiff's allegation of conspiracy is entirely conclusory and devoid of any supporting factual basis. The Complaint simply makes a "boilerplate" allegation that "Defendants Riley, Nabers, Main, King Sawyer, Tarver, Lynn, Cobb, Bresseler, Bloch, Debrow, Shelton, Knox Pest Control who in concert conspired under the color of state law, to violate Plaintiff [sic] rights to make and enforce a pest control contract with Mental Health." *Compl.* ¶ 42.

As discussed above, such "boilerplate" allegations of conspiracy are not sufficient to survive a motion to dismiss under Rule 12(b)(6). *See also Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) (in civil rights conspiracy actions, conclusory, vague and general allegations of conspiracy are insufficient to support a claim of conspiracy). Accordingly, Knox and Shelton move the Court to dismiss Plaintiff's § 1985 claim with prejudice.

It having been established that Plaintiff has failed to state a claim under § 1985, Plaintiff's § 1986 claim fails as a matter of law. Section 1986 requires that there be a violation of § 1985 before there can be a viable § 1986 claim. *See* 42 U.S.C. § 1986; *see also Park v. City of Atlanta*, 120 F.3d 1157, 1160 (11th Cir. 1997) ("[t]he text of § 1986 requires the existence of a § 1985 conspiracy"). Accordingly, because Plaintiff "has failed to state a claim upon which relief

may be granted under § 1985, [P]laintiff has failed to state a claim under § 1986 upon which relief may be granted." *Lucy v. McGowin*, 1999 U.S. Dist. LEXIS 11766 at *16 (S.D. Ala. 1999).

## Count Five: First Amendment Retaliation

Plaintiff's fifth count seeks to state a claim against Knox and Shelton under the First Amendment to the United States Constitution. Plaintiff, however, has not sufficiently plead facts which would give rise to such a claim. As the factual basis for this count, Plaintiff alleges that "[t]his count is brought … for Defendants' … violation of Plaintiff's rights to voice his Freedom of Speech concerning Public Health issues without the fear of retaliation." *Compl.* ¶ 48. This allegation alone is insufficient to state a claim under the First Amendment.

Even more fundamental, Plaintiff's First Amendment claim against Knox and Shelton, brought pursuant to § 1983, fails because neither Knox nor Shelton is a state actor. The Supreme Court has recognized that "[i]t is, of course, commonplace that the constitutional guarantee of free speech is a guarantee only against abridgment by government, federal or state." *Hudgens v. National Labor Relations Board*, 424 U.S. 507, 513 (1976). Thus, "the guarantee of free speech and equal protection guard only against encroachment by the government and 'erect no shield against merely private conduct.'" *Hurley v. Irish-American Gay, Lesbian and Bisexual Group of Boston*, 515 U.S. 557, 566 (1995) (quoting *Shelley v. Kraemer*, 334 U.S. 1, 13 (1948)). Because neither Knox nor Shelton is a state actor, they cannot be liable for a violation of the First Amendment; therefore, Plaintiff's First Amendment retaliation claim against Knox and Shelton is due to be dismissed with prejudice.

## Plaintiff's State Law Claims (Count Six and Count Seven) are due to be Dismissed

In light of the foregoing, it is clear that Plaintiff has not stated a claim against Knox and Shelton under any federal statute or law. Plaintiff's remaining claims "arise under" state law, and

could not be heard in this Court in the absence of a colorable federal claim to support supplemental jurisdiction over those claims. Accordingly, because Plaintiff has failed to state a claim under federal law against Knox and Shelton, this Court should decline to consider Plaintiff's claims brought under state law. *See* 28 U.S.C. § 1367(c)(3) ("[t]he district court may decline to exercise supplemental jurisdiction over a claim under subsection (a) if …. the district court dismissed all claims over which it has original jurisdiction").

**<u>Count Six: Violation of Alabama Competitive Bid Law and Violation of the Mental Health Department Purchasing Policies and Board of Examiners Established Procedures</u>**

If the Court chooses to exercise supplemental jurisdiction over Plaintiff's state law claims, Plaintiff's claim against Knox and Shelton for alleged violations of the Alabama Competitive Bid Law and the Mental Health Department's Purchasing Polices and Board of Examiners Established Procedures is due to be dismissed.

As has been consistently pointed out, Knox and Shelton are not in any way affiliated with the state of Alabama. Knox, rather, is a private entity which was in competition with Plaintiff for certain pest control contracts with the Mental Health Department, and Shelton is simply one of Knox's employees. Plaintiff, nevertheless, seeks to hold Knox and Shelton liable for alleged violations of the Alabama Competitive Bid Law and the internal procedures of the Mental Health Department. As previously set forth, Plaintiff's only material allegations against Knox and Shelton are that "the Defendants knew that Plaintiff was more qualified than the other bidder and specifically Defendant Linda Shelton and Knox Pest Control because Plaintiff possessed a Lawns & Ornamental License …. [which] Defendant Barton [sic] and Knox Pest Control did not possess …."; that "Defendant Bresseler fail[ed] to disqualify Knox Pest Control at the bid opening for not submitting a current License/Permit as required by the bid specifications"; and that "Defendants Shelton, Knox Pest Control and Bloch were allowed to submit fraudulent

documents stating that Trinidad J. Villegas permit/license were [sic] current after the bid opening." *Compl.* 29, 34, 35. Under even the most liberal pleading standard, it is clear that these facts simply do not state a claim against Knox and Shelton for a violation of the Alabama Competitive Bid Law or the internal rules or regulations of the Mental Health Department. As a consequence, Count Six of the Complaint is due to be dismissed with prejudice.

## Count Seven: Intentional Interference with Business Relations

Finally, Plaintiff accuses Knox and Shelton of the state law tort of tortiously interfering with a business relationship.

Under Alabama law, in order to establish a claim of intentional interference with business relations, Plaintiff would have to plead, and ultimately prove:

> (1) the existence of a contract or business relation; 2) the defendant's knowledge of the contract or business relation; 3) intentional interference by the defendant with the contract or business relation; 4) the absence of justification for the defendant's interference; and (5) damage to the plaintiff as a result of the interference.

*Tom's Foods, Inc. v. Carn*, 896 So. 2d 443, 453 (Ala. 2004). In addition, "it is essential to a claim of tortious interference with contractual relations that the plaintiff establish that the defendant is a 'third party,' i.e., a 'stranger' to the contract with which the defendant allegedly interfered. …. This is so, because 'a party to a contract cannot, as a matter of law, be liable for tortious interference with the contract.'" *Id.* at 454.

Assuming arguendo that the other three elements of the tort are properly plead, the Complaint makes no allegation that could be construed as an act of interference by Knox and Shelton with any contract or business relationship of the Plaintiff. Even if the facts as pleaded could be interpreted as an act of interference, Knox's actions would be justified and protected by the competitor's privilege. The law is clear that "competition in business, even though carried to

the extent of ruining a rival, constitutes justifiable interference in another's business relations, and is not actionable, so long as it is carried on in furtherance of one's own interests. *Soap Co. v. Ecolab, Inc.*, 646 So. 2d 1366, 1371 (Ala. 1994).

Put simply, Plaintiff does not allege that Knox and/or Shelton did anything other than operate their business in a lawful fashion. Accordingly, Knox and Shelton move the Court to dismiss Count Seven of the Complaint with prejudice.

## CONCLUSION

For the foregoing reasons, Defendants Knox and Shelton's motion to dismiss is due to be granted.

/s G. Lane Knight
One of the Attorneys for Knox Pest Control and
Linda Shelton

OF COUNSEL:

Robin G. Laurie (ASB-4217-U64R)
G. Lane Knight (ASB-6748-I72K)
BALCH & BINGHAM LLP
P. O. Box 78
Montgomery, Alabama 36101
Telephone: (334) 834-6500
Facsimile: (334) 269-3115
rlaurie@balch.com
lknight@balch.com

William L. Tucker
PAGE, SCRANTOM, SPROUSE, TUCKER & FORD, P.C.
1111 Bay Avenue, Third Floor, Synovus Centre
Columbus, Georgia  31901

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system and service will be perfected upon any CM/ECF participants electronically and I have mailed by United States Postal Service a copy of the foregoing document to any non-CM/ECF participants this the 31st day of October, 2006:

C&J Associates Pest Control
Mr. Curtis Duncan
P.O. Box 8186
Montgomery, Alabama 36110

*Pro Se*

Scott Lee Rouse, Esq.
Office of the Governor
State Capitol
Suite NB-05
600 Dexter Avenue
Montgomery, Alabama 36130

*Defendant Governor Bob Riley*

Richard H. Cater, Esq.
State Finance Director's Office
State Capitol
N-105
600 Dexter Avenue
Montgomery, Alabama 36130

*Defendants Drayton Nabers, Jr. and James Main*

Benjamin H. Albritton, Esq.
Office of the Attorney General
Alabama State House
11 South Union Street
Montgomery, Alabama 36130

*Defendants Troy King, Kathy Sawyer, Courtney Tarver, June Lynn, Judy Cobb, and Ray Bressler*

Robert J. Russell, Sr., Esq.
Department of Agriculture & Industries
P.O. Box 3336
1445 Federal Drive
81 Watson Circle
Montgomery, Alabama 36107

*Defendants John Bloch and Joe Debrow*

Bruce Alverson
5741 Vendome Drive South
Mobile, Alabama 36609

*Pro Se*

Respectfully submitted,


/s  G. Lane Knight
One of the Attorneys for Knox Pest Control and
Linda Shelton

OF COUNSEL:

Robin G. Laurie (ASB-4217-U64R)
G. Lane Knight (ASB-6748-I72K)
BALCH & BINGHAM LLP
P. O. Box 78
Montgomery, Alabama 36101
Telephone: (334) 834-6500
Facsimile: (334) 269-3115
rlaurie@balch.com
lknight@balch.com


William L. Tucker
PAGE, SCRANTOM, SPROUSE, TUCKER & FORD, P.C.
Synovus Centre
1111 Bay Avenue, Third Floor
Columbus, Georgia 31901

# EXHIBIT "A"

**FILED**

2006 Mar-17 PM 03:00
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
<u>SOUTHERN DIVISION</u>

| | |
|---|---|
| CURTIS DUNCAN, d.b.a. C&J ASSOCIATES PEST CONTROL, | ) <br> ) <br> ) |
| Plaintiff, | ) <br> ) |
| v. | ) CIVIL ACTION NO. 05-PWG-0442-S |
| | ) |
| JEFFERSON COUNTY BOARD OF EDUCATION, JIM ROY, PHILLIP HAMMONDS, YANCY MORRIS, and MAUREEN ALEXANDER, individually and in their official capacity, | ) <br> ) <br> ) <br> ) <br> ) |
| | ) |
| Defendants. | ) |

<u>MAGISTRATE JUDGE'S FINDINGS AND RECOMMENDATION</u>

Curtis Duncan d/b/a C & J Associates Pest Control filed a complaint against Jim Roy, Director of Purchasing for Jefferson County Public Schools; Jefferson County Board of Education; Phillip Hammonds, Superintendent of Jefferson County Public Schools; Yancy Morris, Deputy Superintendent of Jefferson County Public Schools; Maureen Alexander, Director of Child Nutrition of Jefferson County Public Schools; Betsey Schmitt, Principal of Paine Primary School; Audrey Redmond, Secretary of Paine Primary School; Shawn Barton, Sales Representative for Knox Pest Control; and Knox Pest Control. Roy, Hammonds, Morris, Alexander, Schmitt, and Redmond are all named in both their individual and official capacities.

Duncan asserts that this court has jurisdiction pursuant to 28 U.S.C. § 1343(a)(3)and (4) (civil rights) 28 U.S.C. § 1331 (federal question). Duncan alleges that defendants violated his Fourteenth Amendment equal protection rights, his First Amendment right to freedom of speech, and the Alabama Competitive Bid Laws. Duncan seeks relief pursuant to 42 U.S.C. § § 1981, 1983,

1985, and 1986. In addition, he has asserted state causes of action for violation of the Alabama Competitive Bid laws and intentional interference with business relations. Duncan seeks injunctive relief.

The gravamen of the federal claims is Duncan's allegation that defendants conspired to deprive him of the ability to make and enforce a contract with Jefferson County for the performance of pest control service for racially discriminatory reasons. Specifically plaintiff contends that the decision not to award the entire contract to him was "based solely on [Roy's] intent to discriminate against Plaintiff because of his race [black]." (Doc. #20, ¶ 19). He argues that "the most lucrative parts of the contract [were awarded] to [Roy's] favorite white vendor Defendant Barton and Knox Pest Control." (Doc. #20, ¶ 17.)

This matter is before the court on the motions to dismiss filed by the Jefferson County defendants (docs. # 5 and #23), the motion to dismiss filed by defendants Barton and Knox Pest Control (doc. # 27) and plaintiff's motion for leave to amend complaint to add defendants Barton and Knox to count 6 of the complaint (doc. #20) for violation of the Alabama Competitive Bid law.[1]

In *Jackson v. BellSouth Telecommunications,* 372 F.3d 1250, 1262 -1263 (11ᵗʰ Cir. 2004), the Eleventh Circuit reiterated the standard of review on a motion to dismiss under Rule 12(b)(6) for failure to state a claim:

> We review *de novo* a district court's dismissal under Rule 12(b)(6) for failure to state a claim, accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff. *Hill v. White,* 321 F.3d 1334, 1335 (11th Cir.2003) (per curium); *see also Jackson v. Birmingham Bd. of Educ.,* 309 F.3d 1333, 1335 (11th

---

[1] Although this matter is before the court on a motion to dismiss, plaintiff requested at a hearing the opportunity to submit evidence in opposition to the motion. It is plaintiff's evidentiary submission which is considered below.

2

Cir.2002) (citing *Stephens v. Dep't of Health & Human Servs.,* 901 F.2d 1571, 1573 (11th Cir.1990)) ("On a motion to dismiss, the facts stated in appellant's complaint and all reasonable inferences therefrom are taken as true."). A motion to dismiss is granted only "when the movant demonstrates 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Jackson,* 309 F.3d at 1335 (quoting *Harper v. Blockbuster Entm't Corp.,* 139 F.3d 1385, 1387 (11th Cir.1998) (quoting *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)).

"Although a plaintiff is not held to a very high standard in a motion to dismiss for failure to state a claim, some minimal pleading standard does exist." *Wagner v. Daewoo Heavy Industries Am. Corp.,* 289 F.3d 1268, 1270 (11th Cir.), *rev'd on other grounds,* 314 F.3d 541 (11th Cir. 2002) *(en banc).* "[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis,* 297 F.3d 1182, 1188 (11th Cir. 2002) (internal quotation marks and citation omitted); *see also Associated Builders, Inc. v. Ala. Power Co.,* 505 F.2d 97, 100 (5th Cir.1974) ("Conclusory allegations and unwarranted deductions of fact are not admitted as true...."); *Robinson v. Jewish Ctr. Towers, Inc.,* 993 F.Supp. 1475, 1476 (M.D. Fla.1998) ("[T]he court will not accept, without more, conclusory allegations or legal conclusions masquerading as factual conclusions."); *Cummings v. Palm Beach County,* 642 F.Supp. 248, 249-50 (S.D. Fla.1986) (finding vague and conclusory complaint failed to state a *factual* basis for claims of race and age discrimination required to give defendant notice necessary to prepare defense). To survive a motion to dismiss, plaintiffs must do more than merely state legal conclusions; they are required to allege some specific factual bases for those conclusions or face dismissal of their claims.

Duncan alleges that Roy "for discriminatory reasons" conspired with Barton and Knox to continue to provide services even after the contract was awarded to plaintiff. (Doc. #20, ¶ 20). Duncan alleges that Roy's "discriminatory and conspiracy [sic] intent was to have defendants Barton and Knox to continue servicing the Central Office Building" and that "by means that were unlawful, oppressive, or immoral, the Defendants Roy, Barton and Knox acted in concert to conspire to injure Plaintiff by preventing the Plaintiff from servicing the entire pest control contract." (Doc. #20, ¶ 28).

3

He alleges that Roy, Redmond and Schmitt conspired with Barton and Knox to "discriminate against plaintiff ... and circumvent the competitive bidden [sic] for Paine Primary School." (Doc. #20, ¶ 29). He alleges that he was contacted by Redmond and Schmitt about servicing Paine for an Argentine ant infestation. (Doc. #20, ¶ 29). After consulting with Roy, Redmond and Schmitt informed Duncan that they "could [continue] to do business with defendants Barton and Knox Pest Control." (Doc. #20, ¶ 31). "Redmond and Schmitt stated that even though Plaintiff was the lowest responsible bidder, they could choose Knox even if their price was higher, and that they preferred to continue their relationship with Knox because they previously performed the pest control services at their old school." (Doc. #20, ¶ 31). Duncan alleges that Roy violated his "constitutional rights of equal protection of the law and due process by canceling plaintiff['s] contract even though he knew plaintiff had cured the services for the lunchroom for two consecutive months of January 2004 and February 2004" and even though the bid specifications did not contain provisions for the contractor to "cure" past failures. (Doc. #20, ¶ ¶ 31-32). He alleges that Roy "for discriminatory reasons used the misleading and self serving letter" written by Redmond, who "has built a personal relationship with Knox Pest Control due to their previous and current service of her school," as the reason to cancel a Federal Funded Children Nutrition Program Contract. (Doc. #20, ¶ 34). He alleges that Redmond "was also involved in the conspiracy with Roy, Baron and Knox against the plaintiff." (Doc. #20, ¶ 34). Duncan alleges that on February 25, 2004, while performing pest service at the Rudd Middle School lunchroom where Roy and Alexander were attending a meeting, Roy and Alexander saw him, and that "Roy and Alexander because of their racial bias left without informing Plaintiff of their intentions to have his contract cancelled by the Board." (Doc. #20, ¶ 35). He alleges that "Roy because of his racial bias did not afford Plaintiff to a Hearing before him of the

4

Board before this illegal cancellation of contract on February 27, 2004." (Doc. #20, ¶ 36). Duncan alleges that in a meeting conducted at his request in March 2004 following the cancellation of the contract, defendants Hammonds, Morris and Alexander "knowingly and willfully agreed to all actions of Defendant Roy['s] improprieties and unconstitutional acts and racial bias committed against Plaintiff" and "intentional[ly] chose to become part of the conspiracy and discriminate against Plaintiff." (Doc. #20, ¶ 38). Duncan alleges that "defendant Roy for discriminatory reasons refused to follow any of my professional recommendations in a timely matter" concerning repairs needed to prevent pest infestation, leading to "the increased cost for Plaintiff to perform services for the kitchens." (Doc. #20, ¶ 39). He alleges that his professional pest control recommendation is constitutionally protected speech under the First Amendment because it concerns "not only for the Public but also ... the Health of the Public." (Doc. #20, ¶ 39). He alleges that Roy retaliated against him by not having the repairs done in a timely manner or at all, resulting in "unnecessary callbacks at plaintiff's expense" and providing "additional bias motive to cancel plaintiff['s] contract because he did not want Plaintiff['s] reports and recommendations to become public. (Doc. #20, ¶ 39). Duncan alleges that "Roy because of his racial bias for Plaintiff knowingly and willfully violated the State of Alabama Competitive Bids Law Section 41-16-50, 41-16-63, the Jefferson County Board of Education established policy #725.27 and the Procedures established by the Examiners of Public Accounts" by not awarding the entire contract to plaintiff, by allowing Knox whose prices were higher than plaintiff's to perform pest services and by cancelling plaintiff['s] contract when he knew that plaintiff had "cured" the services for the kitchens for two consecutive months of January and February. (Doc. #20, ¶ 40).

5

Duncan submitted various documents with his motion for first amendment to complaint (doc. #7) which was found to be moot on June 13, 2005. Plaintiff relies upon these documents in his opposition to defendants' motions to dismiss. (Doc. #32). The court may consider these without converting the Rule 12(b)(6) motion into a motion for summary judgment because the attached documents were central to the plaintiff's claims and undisputed. *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11ᵗʰ 2002).

The following facts are gleaned from the documents provided by Duncan. Defendants advertised for Pest Control Services for the entire school system for Jefferson County Board of Education. (Doc. # 7, exhibit 1). The Invitation to Bid contained the following overview:

> Overview: the purpose of this "Invitation to Bid" is to make available to our schools the purchase and delivery of pest control services. Item # 1 – Services for cafeterias are guaranteed, while Services included for local school buildings in Item #2 and #3 are not guaranteed and will be secured and paid for by the local school on an "as needed basis." (Doc. #7, exhibit 1, p. 5).

On May 20, 2003, the sealed bids were opened and C&J Associates was the low bidder. (Doc. #7, exhibit 3). In a letter to Roy, dated May 30, 2003, plaintiff repeated the prices that had been agreed upon on May 28, 2003 and certain terms including:

> Our prices are based on C & J being the contract vendor for pest control services for the entire school system, with cafeteria service being guaranteed and general school and additional special services given to us when services are needed. ...
>
> However, we understand from talking with you on May 28, 2003 that each school can select a pest control company of their choice so long as they use non-governmental funds to pay for that service....

(Doc. #7, exhibit 2). On June 20, 2003, the Jefferson County Board of Education awarded the bid to C & J Associates. (Doc. #7, exhibit 3).

6

On February 6, 2004, Duncan wrote Roy acknowledging that pest control services had not been performed for 14 kitchens in the month of November and 42 kitchens in the month of December. He attributed the failure to provide services in November and December to an employee's inability to meet lunchroom managers and schedule services during the holidays. He further stated that all schools had been serviced for the month of January by January 31 and that none of the kitchens had pest infestation problems (Doc. #7, exhibit 4). On February 27, 2004, Duncan wrote a followup letter stating that all schools had been serviced for the month of February and requesting the status of the pest control contract. (Doc. #7, exhibit 5). On February 27, 2004, the Board terminated the contract due to "a failure to deliver within the terms of the contract. Specifically, C & J Associates failed to provide service to all lunchroom facilities on a monthly basis." (Doc. #7, exhibit 6). On March 5, 2004, Duncan filed a protest to the cancellation of the contract explaining that C & J had "cured the services" and "guaranteed future serv[ic]es to be completed on a monthly basis." (Doc. #7, exhibit 7). In his protest, he also complained:

> The Board accepted C&J's price for pest control services as per the bid specifications which included:
>
> 1.    Monthly services for lunchroom
> 2.    Monthly services for schools
> 3.    Specialized services priced at prevailing market rate
>
> Regardless of the award to C&J Associates, Jim Roy, Jefferson's [sic] County Board of Education Purchasing Director has taken his own initiative to only award part of the contract to C&J. That part is the monthly services for the lunchrooms, which are federally funded. When a school calls his office for service, Mr. Roy awards the contract for services to other pest control companies, specifically to Knox Pest Control, by informing schools that they do no[t] have to use the bidded [sic] contract prices and contractor. He informed the schools that they could use any contractor that they wanted to use and that the price could be higher or lower than the bidded [sic] price. He

7

stated the reason that the schools could [sic] this is so long as the schools did not pay for the services from state or federal funds, but from fund raising money, etc. Before the bid opening, Mr. Roy told all the contractors at the pre-bid conference that they wanted one cont[r]actor to perform services for both the lunchrooms and the schools. After bid was let and the prices were known, Mr. Roy changed his mind about wanting only on contractor. We believe that it is not in the spirit of the competitive bid laws to pay a higher price for services just because one is not using state or federal funds.

We believe our contract was cancelled in order to award the contract to Knox Pest Control, the previous cont[r]actor for Jefferson County Board of Education. Knox was out bidded [sic] by my company for this current bid.

(Doc. #7, exhibit 7)

The complaint consists of most exclusively of "conclusory allegations, unwarranted deductions of facts [and] legal conclusions masquerading as facts."[2] While Duncan liberally attributes "discriminatory reasons" and conspiratorial actions to defendants, he fails to allege the existence of any facts which would support a finding of such motives.

Plaintiff was awarded a contract under the Alabama Competitive Bid law. He contends that it was improper for him not to have been awarded the entire pest control business.[3] He alleges that Knox, the previous supplier of pest control services, continued to provide some pest control services after the award of his contract. He argues that defendants did not follow his pest control

---

[2]  *Oxford Asset Mgmt Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002), cert. denied, 540 U.S. 872 (2003).

[3]  The contract guaranteed Duncan the monthly servicing of cafeterias but other services were not guaranteed but were to be paid for by the local schools on an as needed basis. Plaintiff's allegations that he was not awarded the entire contract is misleading. (Doc. #7, exhibit 1, p.5). The Alabama Bid Law does not apply to "Purchases made by individual schools of the county or municipal public school systems from moneys other than those raised by taxation or received through appropriations from state or county sources." § 41-16-51(b)(2). Plaintiff has not specifically alleged that Knox was paid from moneys raised by taxation or received through appropriations from state or county sources. At any rate, the violation of the Alabama Bid Law would not, without more, rise to the level of a federal claim. The magistrate judge will recommend that the court decline to exercise jurisdiction over the state law claims.

8

recommendation which resulted in more callbacks and greater expense to him. Duncan asserts that the contract was improperly terminated since he had "cured the services for the lunchrooms" for January and February 2004 and that he was denied a due process hearing prior to the termination. Duncan does not dispute that he failed to provide pest control services to 14 kitchens in November and 42 kitchens in December 2003. It is unclear how he reaches the conclusion that providing the monthly service in January and February 2004 "cured" the undisputed failure to provide services altogether to some kitchens in November and December 2003. Further, Duncan does not identify any provision in the contract which requires a hearing prior to the termination. In fact, the contract clearly provides that the Jefferson County Board of Education has the right to cancel any contract for "failure to deliver within the terms of the contract." (Doc. #7, exhibit 1, p. 4). The terms of the contract required cafeteria pest control services on a monthly basis. (Doc. #7, exhibit 1, p. 13).

42 U.S.C.A. § 1981 provides:

> (a) Statement of equal rights
>
> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.
>
> (b) "Make and enforce contracts" defined
>
> For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

9

(c) Protection against impairment

The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

In *Butts v. County of Volusia*, 222 F.3d 891 (11th Cir. 2000), the Eleventh Circuit Court of Appeals held that in a case involving state actors there is no liability under § 1981 and such claims merge into the § 1983 claims. The § 1981 claim against all defendants but for Barton and Knox is due to be dismissed. Further, as against private actors Barton and Knox, the § 1981 claim for racial discrimination is due to be dismissed as no facts are alleged to support a finding of purposeful discrimination on the part of Barton and Knox. *Jackson v. BellSouth Telecommunications*, 372 F.3d 1250, 1270 (11th Cir. 2004). At best, the complaint merely alleges that Barton and Knox continued to provide pest control services to the central office building and various schools even after learning that plaintiff had received the contract to provide services to Jefferson County schools.

In count 2, Duncan asserts a claim under 42 U.S.C. §1983, alleging that the named defendants, except the Jefferson County Board of Education, acted under color of state law to violate his Fourteenth Amendment right to equal protection to be free from race discrimination in competitive bid contract and impaired his ability to make and enforce a pest control contract with Jefferson County under the same rights afforded white vendors. Title 42 U.S.C. § 1983 provides that if an individual has been deprived of a right guaranteed to him by the Constitution or laws of the United States under color of state law, such an individual has a right to seek appropriate relief in a United States district court. The threshold question is whether plaintiff was deprived of a right guaranteed by the Constitution. "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the

laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Center,* 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe,* 457 U.S. 202, 216 (1982)). In order to show an equal protection violation, the plaintiff must show that the defendants acted with the intent to discriminate against him. *See McCleskey v. Kemp,* 481 U.S. 279, 292 (1987); *E & T Realty v. Strickland,* 830 F.2d 1107, 1112-13 (11th Cir.1987), *cert. denied,* 485 U.S. 961 (1988). Plaintiff's generalized claim of prejudice, or discrimination, does not state a claim in violation of the equal protection clause of the Constitution. The mere allegation that defendants allowed Knox to provide some pest control services and that Knox provided those services even though plaintiff was awarded the pest control contract does not also allege a factual basis for concluding there was a deliberate action against plaintiff by defendants based upon race. Plaintiff does allege in a conclusory fashion that all actions taken were taken for discriminatory reasons or were accompanied by discriminatory intent. Based simply on the FACTS stated in the complaint <u>and</u> the documents provided by plaintiff, plaintiff has actually alleged only that defendants allowed Knox to provide some services (but not the guaranteed lunchroom services that were awarded to plaintiff under the contract) based on their prior performance during a previous relationship. Duncan alleges that Barton and Knox were Roy's "favorite white vendor." While the factual allegations indicate that Knox may have been the defendants' "favorite" vendor, Duncan has not alleged the existence of a fact to suggest that this favoritism was based on the race of Barton and Knox. Indeed, the facts as alleged by Duncan indicate that the "favoritism" was based on a previous work relationship. Favoritism that is not related to plaintiff's race will not support a § 1983 claim based on violation of the equal protection clause. C.f., *Platner v. Cash & Thomas Contractors, Inc.*, 908 F.2d 902, 905 (11th Cir. 1990) ("To hold that favoritism toward friends and relatives is *per se*

11

violative of Title VII would be, in effect, to rewrite federal law. The list of impermissible considerations with the context of employment practice is both limited and specific: "race, color, religion, sex, or national origin. We are not free to add our own considerations to the list.... A racially discriminatory motive cannot, as a matter of law, be invariably inferred from favoritism shown on the basis of some family relationship.") Further, Duncan has not identified any similarly situated white vendor who was treated differently than him (that is, whose contract was not cancelled) due to failure to provide monthly service to kitchens for two consecutive months.

In count 3, Duncan asserts a claim under 42 U.S.C. § 1985 alleging that the defendants (except the Jefferson County Board of Education, Hammonds, Morris, and Alexander) conspired under color of state law to violate his right to make and enforce a contract with Jefferson County under the same rights afforded white vendors. To state a claim for a private § 1985 conspiracy, a plaintiff must allege: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; and (4) that a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States. *Denney v. City of Albany,* 247 F.3d 1172, 1190 (11th Cir.2001). In civil rights conspiracy actions, conclusory, vague and general allegations of conspiracy are insufficient to support a claim of conspiracy. *Fullman v. Graddick,* 739 F.2d 553, 557 (11th Cir. 1984). Duncan's allegations regarding the existence of a conspiracy and the defendants' roles in the alleged conspiracy were vague, conclusory and lacking in factual support. Plaintiff has, therefore, failed to state a § 1985 claim.

12

In count 4, Duncan asserts a claim under 42 U.S.C. § 1986 alleging that defendants Roy, Hammonds, Morris, and Alexander conspired under color of state law to impair plaintiff's rights to enjoy the same contractual rights afforded to white vendors.  Duncan alleges that Hammonds, Morris, and Alexander furthered the conspiracy initiated by Roy "even after Plaintiff exposed Defendant Roy['s] improprieties and racial bias to them."

42 U.S.C. § 1986 provides in pertinent part:

> Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in the preceding section [42 U.S.C. § 1985], are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented; . . .

Because plaintiff has not established a violation of § 1985, his § 1986 claim must also fail.  *Park v. City of Atlanta*, 120 F.3d 1157, 1160 (11th Cir. 1997).   Further, as to Hammonds, Morris, and Alexander, plaintiff alleged that "after the cancellation of the contract" these defendants agreed to Roy's action and became part of the conspiracy.  Because they did not have actual knowledge that a § 1985 conspiracy was about to occur and were therefore not in a position to prevent it, Hammonds, Morris and Alexander cannot be liable under § 1986.  *Park*, 120 F.3d at 1162.

In count 5, Duncan asserts a claim under 42 U.S.C. § 1983 alleging that Roy, Hammonds, Morris and Alexander acted under color of state law to violate his Fourteenth Amendment right to equal protection and first amendment right to freedom of speech concerning freedom of public health issues without the fear of retaliation. In support of his First Amendment retaliation claim, Duncan alleges that he made pest control recommendations which are protected by the First Amendment

13

because they concern the health of the public. He alleges that Roy retaliated against him by not

having the repairs done, resulting in unnecessary callbacks at his expense and providing motive to

cancel the contract because Roy did not want Duncan's pest control recommendations to become

public. To state a retaliation claim, the commonly accepted formulation requires that a plaintiff must

establish first, that his speech or act was constitutionally protected; second that the defendants

retaliatory conduct adversely affected the protected speech; and third, that there is a causal

connection between the retaliatory actions and the adverse effect on speech. *Bennett v. Hendrix,* 423

F.3d 1247, 1250 (11th Cir. 2005), *cert. filed,* 74 U.S.L.W. 3452 (Feb. 6, 2006). A pest control

recommendation does not rise to the level of constitutionally protected speech. Even assuming,

without deciding, that the pest control recommendation is protected speech, Duncan has not alleged

that (or how) Roy's failure to make the repairs or the cancellation of the contract adversely affected

the protected speech.

In count 6, Duncan asserts a state claim for violation of the Alabama Competitive Bid Law.

In count 7, Duncan asserts a state claim for intentional interference with business relations. No

discussion of counts 6 and 7 is necessary in light of the recommendation that the court decline to

exercise supplemental jurisdiction over the state law claims.

Based on the foregoing, the magistrate judge RECOMMENDS that the motions to dismiss

(docs. #5, #23, and #27) be GRANTED WITH PREJUDICE as to counts 1, 2, 3, 4, and 5. Having

recommended the dismissal of the federal claims, the magistrate judge FURTHER RECOMMENDS

that the Court DECLINE to exercise supplemental jurisdiction over the state law claims in counts

6 and 7. 28 U.S.C. § 1367(c)(3); *Mergens v. Dreyfoos,* 166 F.3d 1114, 1119 (11th Cir. 1999). In

light of the recommendation that the court decline to exercise supplemental jurisdiction over the state

law claims, the motion for leave to amend the complaint (doc. #20) to add defendants Barton and Knox to count 6 is MOOT.

The parties are referred to Rule 72, Federal Rules of Civil Procedure.

As to the foregoing it is SO ORDERED this the 17th day of March, 2006.

_Paul W Greene_

PAUL W. GREENE
CHIEF MAGISTRATE JUDGE

15