IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA,
NORTHERN DIVISION

| | |
|---|---|
| C&J ASSOCIATES PEST CONTROL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. 2:06-cv-884-MEF |
| | ) |
| BOB RILEY, et al., | ) |
| | ) |
| Defendants. | ) |

**BRIEF SUPPORTING MOTION TO DISMISS**

COMES NOW Defendant Bob Riley, sued in both his individual capacity and his official capacity as Governor of Alabama, by and through the undersigned counsel, and submits the following brief in support of his Motion to Dismiss, filed contemporaneously herewith:

ARGUMENT

**A.   THE PLAINTIFF HAS FAILED TO STATE A CLAIM AGAINST THE GOVERNOR.**

The Governor is at the periphery of the Plaintiff's allegations in this case. As is evident from the Plaintiff's complaint, his claims are directed principally toward actions allegedly perpetrated by officials of the Alabama Department Mental Health and Mental Retardation ("Mental Health"), the Alabama Department of Agriculture ("Agriculture"), and the Alabama Department of Finance ("Finance"). The Governor is apparently included in the complaint only to

allege that he either conspired against or failed to intervene on behalf of the Plaintiff. See, e.g., Pl.'s Compl., ¶¶ 32-35, 42, and 45. Though it is not couched as such in the complaint, these allegations at once suggest that the Plaintiff is attempting to hold the Governor vicariously liable. Yet, "'[i]t is well established in [the Eleventh] Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability.'" Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003) (quoting Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir.1999). Thus, the Governor cannot be subjected to suit merely because other state officials who may ultimately answer to him have allegedly violated the law.

The Governor's connection to this lawsuit is clearly tenuous at best. What is not so clear, however, are the precise grounds on which the Plaintiff is attempting to impose liability on the Governor. This is especially problematic in light of the "heightened pleading" requirement that attends section 1983 claims, especially those for which qualified immunity is raised as a defense.[1] See Gonzalez v. Reno, 325 F.3d 1228, 1235 (11th Cir. 2003). As the Eleventh Circuit has held, "[i]n civil rights and conspiracy actions, . . . more than mere conclusory notice pleading is required" and "a complaint will be dismissed as insufficient where the allegations it contains are vague and conclusory." Fullman v. Graddick, 739 F.2d

---

[1] The Governor asserts that he is entitled to qualified immunity in Part D, infra.

553, 556-57 (11th Cir. 1984). Thus, in reviewing a motion to dismiss in a section 1983 case, a court "need only accept 'well-pleaded facts' and 'reasonable inferences drawn from those facts.'" Gonzalez, 325 F.3d at 1235 (quoting Oladeinde v. City of Birmingham, 963 F.2d 1481, 1485 (11th Cir. 1992)). "'[U]nsupported conclusions of law or of mixed fact and law have long been recognized not to prevent a Rule 12(b)(6) dismissal.'" 325 F.3d at 1235 (quoting Marsh v. Butler County, 268 F.3d 1014, 1036 n. 16 (11th Cir. 2001)). Moreover, the courts "'generally accord . . . official conduct a presumption of legitimacy.'" 325 F.3d at 1235 (quoting United States Dep't of State v. Ray, 502 U.S. 164, 179 (1991)).

In the present case, the Plaintiff's claims against the Governor are sketchy at best. The Plaintiff attributes no particular wrongful act to the Governor and he has altogether failed to articulate precisely how — if at all — his rights have suffered on account of the Governor's specific actions. Though the Governor is mentioned throughout the complaint, the Plaintiff never singles out the Governor and, much to the contrary, he is always referred to amid a host of other alleged wrongdoers. See Pl.'s Compl., ¶¶ 19-21, 32-35, 38-39, 41-42, 44-45, 47-48, 50-51, and 53. The Plaintiff's relegating the Governor to this collective of purported tort-feasors must stem from his inability to ascribe any discrete violation of the law to the Governor. That being the case, the Plaintiff's allegations are wholly insufficient to state a

claim against the Governor. Therefore, based on the above-cited authority, the Governor is entitled to a judgment dismissing the Plaintiff's claims against him.

### B. THE PLAINTIFF'S CLAIMS AGAINST THE GOVERNOR ARE BARRED BY THE STATUTE OF LIMITATIONS.

If there is one thing that is clear about the Plaintiff's complaint, it is that it has been filed too late. Though the Plaintiff initiated this lawsuit on October 1, 2006, the wrongful acts alleged in the Plaintiff's complaint occurred mostly between May and September of 2004. See Pl.'s Compl., ¶¶ 23-28, 30-34. The latest date mentioned in the complaint is October 1, 2004. See Pl.'s Compl., ¶ 36. On that date, exactly two years prior to the commencement of this action, the Plaintiff says he called Ray Bressler, who allegedly informed him that a majority of the pest control contracts that were awarded had *already* been given to Knox Pest Control. See id. Thus, even if everything the Plaintiff alleges in his complaint were completely true, and even if he could somehow attribute his allegations of wrongdoing to the Governor, the face of the complaint makes it clear that such would have occurred at least two years before the Plaintiff commenced this lawsuit.

The statute of limitations for all the Plaintiff's claims is two years. See ALA. CODE § 6-2-38(l) (2005) (prescribing a two-year residual statute of limitations for non-contractual personal injury actions, including the state-law claims asserted in

Counts Six and Seven of the Plaintiff's complaint); see also Owens v. Okure, 488 U.S. 235, 249-50 (1989) (a state's residual statute of limitations generally applies to claims brought under the Federal Civil Rights Act); Hiton v. Tyson Foods, Inc., 144 Fed. Appx. 795, 798 (11th Cir. 2005) (claims arising under provisions of section 1981 that preexisted that statute's 1991 amendment are subject to two-year limitations period in Alabama)[2]; Jones v. Preuit & Mauldin, 876 F.2d 1480, 1483 (11th Cir. 1989) ("the two-year limitations period of Ala. Code § 6-2-38(l) applies to section 1983 actions in Alabama"); Trawinski v. United Technologies, 1313 F.3d 1295, 1298-99 (11th Cir. 2002) (two-year limitations period applies to section 1985 claims).[3] Under federal law, a cause of action accrues, and thereby sets the limitations clock running, when a plaintiff first knows or should know of his injury and who caused it. See Chappell v. Rich, 340 F.3d 1279, 1283 (11th Cir. 2003) (citing Mullinax v. McElhenny, 817 F.2d 711, 716 (11th Cir. 1987)). The standard is similar but somewhat different under state law, which dictates that a cause of

---

[2] Because Count One of the complaint is based mainly on the Plaintiff's inability to *obtain* a contract with Mental Health, he appears to assert a classic "make and enforce contracts" claim under section 1981. Thus, the Plaintiff does not appear to assert a cause of action predicated upon the provisions of section 1981 that were enacted in 1991, even though he may purport to invoke the "Civil Right Act of 1991" [sic] in the headings of Counts One through Five of the complaint. Accordingly, the four-year limitations period of 28 U.S.C. 1658(a) does not apply. See generally Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369 (2004).

[3] Inasmuch as the Plaintiff's section 1986 claim is derivative of the section 1985 violations he alleges, Park v. City of Atlanta, 120 F.3d 1157, 1159-60 (11th Cir. 1997), the two-year limitations period would apply to that claim as well.

action accrues whenever a plaintiff first sustains legal injury.  See Ex parte Floyd, 796 So. 2d 303, 308 (Ala. 2001).

In the present case, the Plaintiff may contend that he could not have maintained an action until he was told on October 1, 2004, that Mental Health had not awarded him a contract for pest control services.  See Pl.'s Compl., ¶ 36.  To do so, however, would ignore the fact that, if the Plaintiff was told on October 1, 2004, that he had not won a contract, then the alleged injury itself was already inflicted by that time.  Such an argument would also ignore the many injuries that the Plaintiff alleges to have occurred well before October 1, 2004.  Throughout Count One of the complaint (which contains much of the Plaintiff's factual allegations), the Plaintiff repeatedly asserts that the various defendants had *already* initiated an illegal bidding process that violated his civil rights.  See Pl.'s Compl., ¶¶ 22-23, 25-31.  Moreover, it is indisputable that the Plaintiff was aware of the alleged injuries, because he submitted letters of protest to the various defendants on multiple occasions, all *before* October 1, 2004.  See Pl.'s Compl., ¶¶ 24, 32-34.  Thus, whenever and however the Plaintiff first became injured and aware of that injury, it is absolutely certain that such occurred *before* October 1, 2004.  As a result, when he commenced his lawsuit on October 1, 2006, it was filed outside the two-year limitations period provided in section 6-2-38(l) of the Code of Alabama.

### C.  THE GOVERNOR IS ENTITLED TO ELEVENTH AMENDMENT AND SOVEREIGN IMMUNITY.

The Plaintiff has sued the Governor in both his official and individual capacities.  See Pl.'s Compl., ¶ 4.  Because the Governor is a duly elected state official, the Plaintiff's official-capacity claims must be considered to be against the State itself.  This, in turn, affords the Governor Eleventh Amendment immunity; the state need not actually be named as a party for such immunity to be available.  See Williams v. Bennett, 689 F.2d 1370, 1376 (11th Cir. 1982), cert. denied 464 U.S. 932 (1983).  Thus, the Plaintiff's federal claims for damages against the Governor in his official capacity are barred by Eleventh Amendment immunity and should be dismissed.

The Plaintiff's state-law claims against the Governor in his official capacity are similarly barred by the State's sovereign immunity, as is bestowed by Article I, section 14 of the Alabama Constitution of 1901.  In Haley v. Barbour County, the Alabama Supreme Court held that "Section 14 prohibits actions against state officers in their official capacities when those actions are, in effect, actions against the State."  885 So. 2d 783, 788 (Ala. 2004) (citing Lyons v. River Road Constr., Inc., 858 So. 2d 257, 261 (Ala. 2003), and Mitchell v. Davis, 598 So. 2d 801, 806 (Ala. 1992)).  Thus, the Plaintiff's claims under state law for damages against the Governor in his official capacity are barred by sovereign immunity and should be dismissed.

### D. THE PLAINTIFF'S CLAIMS AGAINST THE GOVERNOR ARE BARRED BY QUALIFIED IMMUNITY.

To the extent the Governor has been sued under federal law in his individual capacity, see Pl.'s Compl., ¶ 4, he is entitled to qualified immunity. The basic test for qualified immunity was stated in Harlow v. Fitzgerald, 457 U.S. 800 (1982):

> [G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate "clearly established" statutory or constitutional rights of which a reasonable person would have known.

457 U.S. at 818. Qualified immunity bars claims "so long as [the defendant's] actions could reasonably have been thought consistent with the rights they are alleged to have violated." Anderson v. Creighton, 483 U.S. 635, 638 (1987). Further, qualified immunity is not just a bar to damages, it is a bar to suit. Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). Even allegations of animus by a state actor against a plaintiff are not sufficient to overcome the presumption of qualified immunity. See Hansen v. Soldenwagner, 19 F.3d 573, 578 (11th Cir. 1994) (stating that "[f]or qualified immunity purposes, the subjective motivation of the defendant-official is immaterial").

The justification for qualified immunity is that such immunity is necessary in order for the government to effectively function. If not for the protections immunity provides, state officials could be subject to suit for every move they

make. This would have a serious chilling effect on the ability of such officials to do their jobs. In sum, state officials should be allowed to exercise discretion in the performance of their duties without fear of a lawsuit around every corner. Mitchell, 472 U.S. at 525-26; see also Hunter v. Bryant, 502 U.S. 224, 229 (1991); Burrell v. Bd. of Trustees of Ga. Military College, 970 F.2d 785, 794 (11th Cir. 1992), cert. denied, 507 U.S. 1018 (1983).

In the present case, the Governor denies that he violated "a clearly established right" of the Plaintiff. As such, it is incumbent upon the Plaintiff to show that the Governor violated "clearly established constitutional law" in his dealings (whatever they might have been) with him. See Zeigler v. Jackson, 716 F.2d 847, 849 (11th Cir. 1983) (holding that it is a plaintiff's burden to rebut a defendant's qualified immunity defense). This, however, has not been demonstrated by the Plaintiff. He has alleged no specific wrongdoing, much less a constitutional injury, perpetrated by the Governor. Likewise, the Plaintiff cannot contend that the Governor vicariously harmed him because of the alleged actions of other state officials. See Cottone, 326 F.3d at 1360. Because the Plaintiff cannot demonstrate that any of his clearly established constitutional rights have been infringed, qualified immunity bars his attempt to impose liability on the Governor. Therefore, the Plaintiff's federal claims against the Governor in his individual capacity should be dismissed.

### E. THE PLAINTIFF'S STATE-LAW CLAIMS AGAINST THE GOVERNOR SEEKING DECLARATORY OR INJUNCTIVE RELIEF ARE NONJUSTICIABLE.

In Counts Six and Seven of the complaint, the Plaintiff asserts state-law claims against the Governor (again, amid a host of other alleged wrongdoers) based on his broad and unsupported contention that the Governor violated the competitive bid law and thereby tortiously interfered with the Plaintiff's business. See Pl.'s Compl., ¶¶ 50-54. As is characteristic of the remainder of the complaint, these counts again fail to describe with any particularity how the Governor has done anything to injure the Plaintiff.

The fact of the matter is that the Governor has no special duties under the competitive bid law as it regards the Plaintiff in this case. The Governor did not solicit or review the bids that were submitted for Mental Health's pest control service. Likewise, the Governor did not participate in making any decision concerning such bids, much less the decision as to which bidder would ultimately be awarded a contract with Mental Health. Put more succinctly, the Governor played no role whatsoever in the bid process of which the Plaintiff complains. For that reason, the Governor now cannot affect the bidding or contracting processes to provide whatever declaratory or injunctive relief the Plaintiff may seek in this lawsuit. As a result, his state-law claims vis-à-vis the Governor are simply nonjusticiable.

The Alabama Supreme Court has held that actions will be deemed nonjusticiable "'where, by reason of inadequacy of parties defendant, the judgment could not be sufficiently conclusive.'" Stamps v. Jefferson County Bd. of Educ., 642 So. 2d 941, 944 (Ala. 1994). That court has further observed that "'[a]ctions for declaratory judgments brought by individuals to test or challenge the propriety of public action often fail on this ground, . . . because the . . . public officer or other person selected as a defendant has . . . no special duties in relation to the matters which would be affected by any eventual judgment.'" Id. (quoting Rogers v. Alabama Bd. of Educ., 392 So. 2d 235, 237 (Ala. Civ. App. 1980)). Stated another way, "actions will be deemed nonjusticiable '[w]hen the defendant has no power to affect the plaintiff's rights.'" Ex parte State ex rel. James, 711 So. 2d 952, 964 (Ala. 1998).

As argued herein, it is evident in this case that the Governor has no specific duties regarding the Plaintiff and his attempts to secure a contract for pest control service with Mental Health. Thus, to the extent the Plaintiff seeks declaratory or injunctive relief against the Governor, such claims are nonjusticiable, and this Court lacks subject-matter jurisdiction to consider such claims. See James, 711 So. 2d at 960 n.2. Therefore, this Court should dismiss Counts Six and Seven of the complaint to the extent those claims seek declaratory or injunctive relief against the Governor.

### F. THE PLAINTIFF'S STATE-LAW CLAIMS FOR DAMAGES AGAINST THE GOVERNOR ARE BARRED BY STATE-AGENT IMMUNITY.

In Counts Six and Seven the complaint, the Plaintiff plainly seeks an award of damages under state law against the Governor. See Pl.'s Compl., ¶¶ 51, 53. The Plaintiff asserts these claims against the Governor in both his official and individual capacities. See Pl.'s Compl., ¶ 4. As was argued in Part C, supra, the Governor is entitled to sovereign immunity to the extent the Plaintiff has sued him in his official capacity for damages under state law. However, just as the Governor in his individual capacity is entitled to qualified immunity under federal law, he is protected by State-agent immunity under state law.

In Ex parte Butts, 775 So. 2d 173 (Ala. 2000), the Alabama Supreme Court adopted a test that was first set out in its plurality opinion in Ex parte Cranman, 792 So. 2d 392 (Ala. 2000), for evaluating whether a state official sued in his individual capacity is entitled to immunity as an agent of the State. Though distinct from a qualified immunity analysis under federal law, State-agent immunity similarly shields state officials from liability while they are discharging their duties in good faith. In this case, with the utter absence of any particularity in the Plaintiff's pleading regarding the Governor, it must be presumed that his actions (whatever the Plaintiff might allege them to have been) fell within the protection of State-agent immunity under Alabama law. The Governor can only be

divested of that immunity upon a showing that he acted willfully, maliciously, fraudulently, in bad faith, beyond his authority, or under a mistaken interpretation of law.  Butts, 775 So. 2d at 177-78; Ryan v. Hayes, 831 So. 2d 21, 28 (Ala. 2002).  Moreover, it is the Plaintiff's burden to make such a showing.  Ryan, 831 So. 2d at 27-28; see also Giambrone v. Douglas, 874 So. 2d 1046, 1052 (Ala. 2003) (holding that, once it is shown that a state agent was undertaking a discretionary function, the burden shifts to the plaintiff to disprove the defendant's entitlement to immunity).

      The Plaintiff simply cannot carry the burden of proof in this case.  As argued herein, the Plaintiff has not bothered to state with any particularity what the Governor did (other than to just hold the office of Governor) to become a defendant in this lawsuit.  Consequently, it is inconceivable that the Plaintiff could marshal the evidence needed to defeat State-agent immunity.  If the Plaintiff cannot proffer this evidence, his state-law claims for damages in Counts Six and Seven of his complaint should be dismissed by this Court.

### G. THE PLAINTIFF'S CLAIM FOR DAMAGES IN COUNT SIX OF HIS COMPLAINT IS PRECLUDED AS A MATTER OF LAW.

In Count Six of his complaint, the Plaintiff seeks damages for alleged violations of the state competitive bid law.  See Pl.'s Compl., ¶ 51.  The Alabama Supreme Court, however, has already held that such relief is not available as a matter of law, even to a bidder who might be wrongfully passed over for a state contract.  In Crest Constr. Corp. v. Shelby Co. Bd. of Educ., 612 So. 2d 425, 431-32 (Ala. 1992), it was held that the only relief available for a violation of the competitive bid law is an injunction barring the execution of a contract entered into in violation of the statute.  See ALA. CODE § 41-16-61 (2000).  The Crest court further observed that, "because the Competitive Bid Law benefits the public and creates no enforceable rights in the bidders," "a disappointed bidder's remedies are limited under Alabama law."  612 So. 2d at 432 (citing Townsend v. McCall, 262 Ala. 554, 80 So. 2d 262 (1955)).  Moreover, the "limited" remedy provided by the "unambiguous" language of section 41-16-61 necessarily precludes the availability of compensatory damages to remedy a violation of the competitive bid law.  612 So. 2d at 431-32.  Thus, the Plaintiff's claim for damages in Count Six of his complaint is due to be dismissed on the authority of the Crest.

## CONCLUSION

The above-cited law and arguments considered, Governor Riley requests that this Honorable Court enter a judgment in his favor dismissing all the Plaintiff's claims against him.

Done this 17th day of November 2006.

                                          Respectfully submitted,

                                          **/s/ Scott L. Rouse**
                                          Scott L. Rouse
                                          Bar Number ASB-6905-S72S
                                          Deputy Legal Advisor
                                          Office of the Governor

ADDRESS OF COUNSEL:

Office of the Governor
State Capitol, Suite NB-05
600 Dexter Avenue
Montgomery, Alabama  36130
(334) 242-7120 Phone
(334) 242-2335 Fax
scott.rouse@governor.alabama.gov

# CERTIFICATE OF SERVICE

I hereby certify that on November 17, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following attorneys:

> Benjamin Howard Albritton
> Richard H. Cater
> Griffin Lane Knight
> Robin Garrett Laurie
> Robert Jackson Russell, Sr.
> William Leonard Tucker

I also hereby certify that I have mailed by United States Postal Service to the following:

> C&J Associates Pest Control
> c/o Curtis Duncan
> P.O. Box 8186
> Montgomery, AL 36110

>> **/s/ Scott L. Rouse**
>> Scott L. Rouse
>> Bar Number ASB-6905-S72S
>> Deputy Legal Advisor
>> Office of the Governor

ADDRESS OF COUNSEL:

Office of the Governor
State Capitol, Suite NB-05
600 Dexter Avenue
Montgomery, Alabama  36130
(334) 242-7120 Phone
(334) 242-2335 Fax
scott.rouse@governor.alabama.gov