**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA,
NORTHERN DIVISION**

| | | |
|---|---|---|
| C&J ASSOCIATES PEST CONTROL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:06-cv-884-MEF |
| | ) | |
| BOB RILEY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**GOVERNOR RILEY'S REPLY TO PLAINTIFF'S
OPPOSITION TO MOTIONS TO DISMISS**

COMES NOW Defendant Bob Riley, sued in both his individual capacity and his official capacity as Governor of Alabama, by and through the undersigned counsel, and submits the following reply to the Plaintiff's omnibus opposition to the various Defendants' motions to dismiss:

**I.   INTRODUCTION**

While the Plaintiff's opposition to the Defendants' motions to dismiss consumes many pages, it ultimately says very little. Much of the Plaintiff's argument is a rant concerning his purported right to discover documents related to the bidding process he challenges in this lawsuit. This Court, however, has already denied the Plaintiff's request for an order compelling the disclosure of these documents. See Doc. 51. Stripping away this issue, little of substance remains in the Plaintiff's most recent filing and, unfortunately, much of that is needlessly

suffused with ad hominem attacks against the Defendants and their attorneys. The Plaintiff largely ignores many of the arguments supporting the Defendants' motions to dismiss. And, even when he does attempt to respond to the defenses that have been asserted, much of the Plaintiffs' argument consists only of the recitation of legal truisms. This does nothing to elucidate the factual or legal bases of his claims, and this proves to be especially true as it applies to the exceedingly vague claims the Plaintiff has leveled against the Governor.

What follows is an effort to digest and respond to the Plaintiff's often disjointed arguments opposing the Defendants' motions to dismiss. Ultimately, it is evident the Plaintiff has produced nothing to forestall the dismissal of his claims against Governor Riley. Therefore, the Governor asks that his motion to dismiss be granted and that a judgment be entered in his favor in this lawsuit.

## II. ARGUMENT

### A. THE PLAINTIFF HAS STILL FAILED TO STATE A CLAIM AGAINST THE GOVERNOR.

In his motion to dismiss, the Governor asserted that the Plaintiff's claims against him should be dismissed because they utterly fail to specify how the Governor allegedly violated the Plaintiff's rights. At best, the Plaintiff's claims against the Governor are predicated either on: (1) a *respondeat superior* theory of liability, or (2) that he was somehow a member of a collective of wrongdoers. See Governor's Br. Supp. M. to Dismiss, pp. 1-4. Either way, the Plaintiff's

unsupported claims against the Governor do not pass muster, even when gauged by a motion-to-dismiss standard.

Irrefutably, *respondeat superior* serves as no basis for liability under federal civil rights statutes. Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003). Similarly, heightened-pleading requirements demand, at the very least, *that the Plaintiff specify what the Governor did to violate his civil rights*. See generally Gonzalez v. Reno, 325 F.3d 1228, 1235 (11th Cir. 2003). Though the Plaintiff initially questions the efficacy of the heightened-pleading requirement, he ultimately accepts this burden and, ironically, then conclusorily posits that he has satisfied it. See Pl.'s Opp'n to M. to Dismiss, p. 14 ("Nonetheless, even under the heightened pleading requirement, Plaintiff [sic] complaint is unusually detailed, setting forth with specificity, facts alleging violations of clearly constitutional right [sic] against racial discrimination"). This is absolutely untrue, at least as it regards the Governor. Even by the most lenient of standards, one could read the Plaintiff's complaint and yet have no notion whatsoever of what the Governor did to be sued in this case. Whether or not the Plaintiff must adhere to a heightened-pleading standard, his complaint does not even satisfy the bare requirements of notice pleading. If vagaries and conspiracy theories are all the Plaintiff can marshal against the Governor, his claims simply cannot be allowed to continue. They should, therefore, be dismissed.

### B. THE PLAINTIFF'S CLAIMS AGAINST THE GOVERNOR ARE BARRED BY THE STATUTE OF LIMITATIONS.

As predicted, the Plaintiff contends in his opposition to the Defendants' motion to dismiss that his causes of action in this case did not accrue until October 1, 2004, when he telephoned Ray Bressler and confirmed that he had not been awarded a pest control contract with Mental Health.  See Pl.'s Opp'n to M. to Dismiss, pp. 10-12.  Thus, the Plaintiff maintains his claims were timely filed when he initiated this lawsuit two years later on October 1, 2006.[1]  To support this position, the Plaintiff relies heavily on decisions holding that a cause of action accrues only when a litigant knows or has reason to know of his injury.  See id.  This, however, only proves the correctness of the Governor's argument.

As was set out in the Governor's motion to dismiss, the wrongful acts alleged in the Plaintiff's complaint occurred mostly between May and September of 2004, and the latest date mentioned in the complaint is October 1, 2004.  See Pl.'s Compl., ¶¶ 23-28, 30-34, 36.  Significantly, *all that occurred* on October 1, 2004, was that the Plaintiff confirmed he had not won a contract with Mental Health for pest control services.  It is clear the Plaintiff had lost his bid to garner a state contract *before* he called Ray Bressler on October 1, 2004, so the phone call

---

[1] The Plaintiff states that his filing was "well within the two-year limitations statute." Pl.'s Opp'n to M. to Dismiss, p. 10.  Yet, even if the Plaintiff's legal arguments were correct, the filing of his lawsuit would still have been done almost literally at last minute.

only confirmed what had *already* taken place.  As well, the phone call itself could not have violated the Plaintiff's rights, especially since it was he who initiated the call.  Significantly, the Plaintiff makes clear in his complaint that he believed something improper was going on well in advance of October 1, 2004, as is evidenced by his writing and sending numerous protest letters to the Defendants well before that time.  See Pl.'s Compl., ¶¶ 22-24, 25-34.  Thus, even if the Plaintiff can state that he did not know for a certainty that he had allegedly suffered a violation of his rights until October 1, 2004, he at least had a reason to know of the alleged injury in advance of that date.  This is the very standard the Plaintiff cites in his brief, see Pl.'s Opp'n to M. to Dismiss, pp. 10-12, and by that standard his lawsuit was filed too late.  It should, therefore, be dismissed.

      **C.   THE PLAINTIFF'S OFFICIAL-CAPACITY CLAIMS AGAINST THE GOVERNOR SHOULD BE DISMISSED.**

Despite that the Plaintiff has apparently sued the Governor in both his official and individual capacities, see Pl.'s Compl., ¶ 4, he now states that "[f]or the record C&J is not suing the defendants in their official capacity for monetary damages."  See Pl.'s Opp'n to M. to Dismiss, p. 4.  Thus, to the extent the face of the Plaintiff's complaint does assert damages claims against the Governor in his official capacity, the Plaintiff's concession demands that these claims be dismissed.

### D. THE PLAINTIFF HAS FAILED TO SUFFICIENTLY COUNTER THE GOVERNOR'S ASSERTION OF QUALIFIED AND STATE-AGENT IMMUNITY.

In his motion to dismiss, the Governor asserted that he is entitled to both qualified and State-agent immunity. See Governor's Br. Supp. M. to Dismiss, pp. 8-9, 12-13. In response to this, the Plaintiff, after reciting the basic tests that are employed whenever such immunities are asserted, only cites a string of decisions "as a rebuttal to" the Governor's arguments regarding immunity. See Pl.'s Opp'n to M. to Dismiss, p. 9. The Plaintiff does so, however, without even attempting to explain their application to the present case. See id. Many of these decisions, moreover, are either quite dated or are from jurisdictions other than the Eleventh Circuit or Alabama. See id. Consequently, whatever the Plaintiff's argument might be regarding the Governor's assertion of immunity, the thrust of that argument is not made readily apparent in his filing.

Once a state actor has raised either qualified or State-agent immunity as a defense, it is the plaintiff's burden to rebut that assertion. Zeigler v. Jackson, 716 F.2d 847, 849 (11th Cir. 1983) (it is a plaintiff's burden to rebut a defendant's qualified immunity defense); Ryan v. Hayes, 831 So. 2d 21, 27-28 (Ala. 2002) (it is a plaintiff's burden to demonstrate that a state agent is not immune). Here, though, the Plaintiff's effort to rebut the Governor's immunity defenses is utterly ineffectual. Even as a *pro se* litigant, the Plaintiff cannot get by with making bald

assertions of discrimination or other wrongdoing against the Governor or any other state official. The burden rests squarely on the Plaintiff to articulate not only what the Governor did that was unlawful, but also by what authority such action is deemed unlawful. The Plaintiff simply has not carried that burden. He seems content to plead racial discrimination as though it were a talisman to ward against the dismissal of his factually unsupported claims. Meanwhile, he has not bothered to state with any particularity what the Governor did (other than to just hold the office of Governor) to become a defendant in this lawsuit. This is clearly insufficient to defeat the Governor's immunity defenses and, as a result, the Plaintiff's claims against him should be dismissed by this Court.

### E. THE PLAINTIFF HAS FAILED TO ADDRESS THE GOVERNOR'S ARGUMENTS REGARDING HIS STATE-LAW CLAIMS.

In Counts Six and Seven of the Plaintiff's complaint, he asserts state-law claims alleging that the Governor violated the competitive bid law and tortiously interfered with the Plaintiff's business. See Pl.'s Compl., ¶¶ 50-54. In response to these claims, the Governor first argued that the Plaintiff's state-law claims for declaratory and injunctive relief are nonjusticiable because the Governor had no involvement with the competitive-bid process that the Plaintiff now challenges in his lawsuit. See Governor's Br. Supp. M. to Dismiss, pp. 10-11. The Governor also argued that the Plaintiff's claim for damages under the state competitive bid

law, as asserted in Count Six, is precluded as a matter of law by the decision of the Alabama Supreme Court in Crest Constr. Corp. v. Shelby Co. Bd. of Educ., 612 So. 2d 425, 431-32 (Ala. 1992). The Plaintiff has failed to counter these arguments in his opposition to the Defendants' motions to dismiss[2], indicating that he has waived these issues. Thus, the Plaintiff's state-law claims against the Governor are due to be dismissed.

## III. CONCLUSION

The above-cited law and arguments considered, Governor Riley requests that this Honorable Court enter a judgment in his favor dismissing all the Plaintiff's claims against him.

Done this 19th day of January 2007.

Respectfully submitted,

**/s/ Scott L. Rouse**
Scott L. Rouse
Bar Number ASB-6905-S72S
Deputy Legal Advisor
Office of the Governor

---

[2] In his opposition brief, the Plaintiff states that he "submits Spring Hill Lighting & Supply Company, Inc v. Square D Company, Inc., et al. CV-91-3986 as rebuttal to the Defendants position that the state competitive bid law is prohibited as a matter of law." See Pl.'s Opp'n to M. to Dismiss, p. 9. This is probably an abortive effort to respond to the Governor's argument concerning the state competitive bid law. Presumably, the Plaintiff is attempting to invoke the decision in Spring Hill Lighting & Supply Company, Inc. v. Square D Company, Inc., 662 So. 2d 1141 (Ala. 1995). Yet, the Plaintiff has altogether failed to explain how that decision might apply to the present case. In any event, because the Spring Hill case clearly predates the decision in Crest, it cannot possibly undermine the Governor's argument.

# CERTIFICATE OF SERVICE

I hereby certify that on January 19, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following attorneys:

> Benjamin Howard Albritton
> Richard H. Cater
> Griffin Lane Knight
> Robin Garrett Laurie
> Robert Jackson Russell, Sr.
> William Leonard Tucker

I also hereby certify that I have mailed by United States Postal Service to the following:

> C&J Associates Pest Control
> c/o Curtis Duncan
> P.O. Box 8186
> Montgomery, AL 36110

/s/ Scott L. Rouse
Scott L. Rouse
Bar Number ASB-6905-S72S
Deputy Legal Advisor
Office of the Governor

ADDRESS OF COUNSEL:

Office of the Governor
State Capitol, Suite NB-05
600 Dexter Avenue
Montgomery, Alabama  36130
(334) 242-7120 Phone
(334) 242-2335 Fax
scott.rouse@governor.alabama.gov