IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| C&J ASSOCIATES PEST CONTROL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:06cv884-MEF |
| | ) | WO |
| BOB RILEY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

### RECOMMENDATION OF THE MAGISTRATE JUDGE

Pending before the Court are the following motions to dismiss filed by Defendants:

1.  Knox Pest Control (Knox) and Linda Shelton (Shelton) (Doc. #18);

2.  Bob Riley (Riley) (Doc. #29);

3.  Drayton Nabers, Jr. (Nabers) and James Main (Main) (Doc. #31);

4.  John Bloch (Bloch) and Joe DeBrow (DeBrow) (Doc. #32, #45);

5.  Ray Bressler (Bressler), Judy Cobb (Cobb), June Lynn (Lynn), Kathy

    Sawyer (Sawyer), Courtney Tarver (Tarver), and Troy King (King)

    (Doc. #33);

6.  Bruce Alverson (Doc. #39, #40);

Upon consideration of the motions, the Magistrate Judge RECOMMENDS that the

motion be GRANTED.

## I.    BACKGROUND

Plaintiff, Curtis Duncan and d/b/a C & J Associates Pest Control commenced this

action on October 1, 2006.  See Compl. at 1.  Duncan, a black resident-citizen of

Montgomery County, has performed Pest Control Services for twenty[-]six years and is

sole proprietor of C & J Associates Pest Control.  Compl. at ¶3.  Because Plaintiff has

represented himself as the sole proprietor of Plaintiff company, as well as the sole

applicant and advocate for the company's interests in the disputed contracts, the Court

will reference Plaintiffs in the singular as "Plaintiff" or "Duncan."[1]  Plaintiff's Complaint

arises from its unsuccessful bid on State of Alabama contracts for termite treatment

projects at the Mental Health and Mental Retardation (MHMR).  Plaintiff named the

following individual persons in their individual capacities:  Bob Riley, Governor of the

State of Alabama; Drayton Nabers, former Finance Director of Alabama; James Main,

Finance Director of Alabama; Troy King, Attorney General of Alabama; Kathy Sawyer,

Commissioner of MHMR; Courtney Tarver, Deputy Attorney General and General

Counsel of MHMR; June Lynn, Advisory Attorney and Executive Assistant to the

Associate Commissioner for Administration for MHMR; Judy Cobb, Director of

Purchasing for MRMR; Ray Bressler, Buyer for Purchasing for MHMR; John Bloch,

Director of the Pesticide Regulatory Division for the Agriculture Department; Joe

---

[1]The caption of the Complaint (Doc. #1) designates "C&J Associates Pest Control,
CURTIS DUNCAN - Plaintiff", and Paragraph 3, as follows, provides the only averment
regarding the Plaintiffs:

> The named plaintiff is black citizen of the United States and of the
> State of Alabama and is over the age of nineteen years. Plaintiff
> resides in Montgomery County, Alabama. Plaintiff has performed
> Pest Control Services for twenty five years and is sole owner of C
> & J Associates Pest Control.

DeBrow, Assistant Director of the Pesticide Regulatory Division for the Agriculture

Department (collectively hereinafter "state Defendants"); Bruce Alverson, owner of

Bruce Alverson Consultant, Inc. and Pest Control Consultant for MHMR; and Linda

Shelton, Sales Representative for Knox Pest Control.  Compl. at ¶¶ 4-17; Plf.'s Resp.

Opp'n to Mot. Dismiss at 4.[2]  Plaintiff also named one corporate Defendant, Knox Pest

Control, in the Complaint.  Compl. at ¶18.

　　　Plaintiff's Complaint generally alleges seven counts against all Defendants.[3]

Plaintiff asserts "race discrimination, violation of the 14th Amendment equal protection

clause . . . and the Civil Rights Act of 1991" as the grounds for damages in Counts One,

Two, Three, and Four of the Complaint.  Plaintiff seeks relief pursuant to 42 U.S.C. §§

1981, 1983, 1985, and 1986 (2000).  Compl. at 5-10.  Counts One, Three, and Four allege

---

[2]Plaintiff filed a consolidated response to the motions to dismiss, discussing all motions collectively.  In that response, Plaintiff twice states that he brings this action against all Defendants "only in their individual capacities."  Plf.'s Opp'n to Mot. Dismiss at 3, 4.  Because Plaintiff's concession contradicts the Complaint, which alleges all seven counts against the individual Defendants in both their official and individual capacities, the Court finds Plaintiff has abandoned the "official" capacity claims.  See Resolution Trust Corp. v. Dunmar Corp., 43 F.3d 587, 599 (11th Cir. 1995) ("[T]he onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned."); Compl. at ¶¶ 4-17.  All counts against Defendants in their official capacity are accordingly dismissed.  The Court therefore need not address Defendants' official capacity arguments in support of their motions to dismiss.

[3]The Court observes that the Complaint alleges Count One against all state Defendants except King.  Compl. at ¶ 21.  The Court therefore does not include King in its analysis of Count One.  The Complaint also does not allege Counts Two through Seven against Defendant Alverson.  Compl.at ¶¶ 38, 41, 44, 47, 50, 53.  The Court therefore does not include Alverson in its analysis of those counts.  The only count in which Alverson is named as a Defendant is Count One.  Id. at ¶ 21.

that Defendants' "actions have violated Plaintiff['s] federal constitutional right of the 14th Amendment to enjoy equal protection of the law and civil rights to be free of race discrimination in Competitive Bid Contracting." Compl. at ¶¶ 20, 41, 44. Counts Three and Four allege that Defendants' actions were committed conspiratorially. Compl. at ¶ ¶ 42, 45. In a similar fashion, Count Two alleges that Defendants' "actions have violated Plaintiff['s] federal constitutional right of the 14th Amendment to enjoy equal protection of the law and civil rights to be free of race discrimination in Competitive Bid Contracting under the color of state law." Compl. at ¶38. Count Five alleges that Defendants violated Plaintiff's First Amendment right to freedom of speech. Comp. at ¶¶ 47, 48. Count Six alleges that Defendants violated the Alabama Competitive Bid Laws and the "Mental Health Purchasing Policies and Board of Examiners Established Procedures." Compl. at ¶ 50. Count Seven alleges Defendants' have intentionally interfered with Plaintiff's pest control contract with MHMR. Compl. at ¶ 53. As remedial relief, Plaintiff specifies only "costs," "an order to eliminate all the [D]efendants' bias and discriminatory effects" and "an order reinstating [P]laintiff['s] contract. In response, Defendants have filed motions to dismiss under Federal Rule of Civil Procedure 12(b)(6).

In Jackson v. BellSouth Telecomms., 372 F.3d 1250, 1262-63 (11 th Cir. 2004), the Eleventh Circuit reiterated the standard of review on a motion to dismiss under Rule 12(b)(6) for failure to state a claim:

We review *de novo* a district court's dismissal under Rule 12(b)(6) for failure to state a claim, accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff.  Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003) (per curiam); see also Jackson v. Birmingham Bd. of Educ., 309 F.3d 1333, 1335 (11th Cir. 2002) (citing Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990)) ("On a motion to dismiss, the facts stated in appellant's complaint and all reasonable inferences therefrom are taken as true.").  A motion to dismiss is granted only "when the movant demonstrates 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  Jackson, 309 F.3d at 1335 (quoting Harper v. Blockbuster Entm't Corp., 139 F.3d 1385, 1387 (11th Cir. 1998) (quoting Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957))).

Although a plaintiff is not held to a very high standard in a motion to dismiss for failure to state a claim, some minimal pleading standard does exist."  Wagner v. Daewoo Heavy Indus. Am. Corp., 289 F.3d 1268, 1270 (11th Cir.), rev'd on other grounds, 314 F.3d 541 (11th Cir. 2002) (en banc).  "[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal."  Oxford Asset Mgmt., Ltd. v. Jaharis, 297 F.3d 1182, 1188 (11th Cir. 2002) (internal quotation marks and citation omitted); see also Associated Builders, Inc. v. Ala. Power Co., 505 F.2d 97, 100 (5th Cir. 1974) ("Conclusory allegations and unwarranted deductions of fact are not admitted as true...."); Robinson v. Jewish Ctr. Towers, Inc., 993 F. Supp. 1475, 1476 (M.D. Fla. 1998) ("[T]he court will not accept, without more, conclusory allegations or legal conclusions masquerading as factual conclusions."); Cummings v. Palm Beach County, 642 F.Supp. 248, 249-50 (S.D. Fla. 1986) (finding vague and conclusory complaint failed to state a *factual* basis for claims of race and age discrimination required to give defendant notice necessary to prepare defense).  To survive a motion to dismiss, plaintiffs must do more than merely state legal conclusions; they are required to allege some specific factual bases for those conclusions or face dismissal of their claims.

Jackson v. BellSouth Telecomms., 372 F.3d at 1262-63.  Although *"[p]ro se* pleadings

are held to a less stringent standard than pleadings drafted by attorneys and will,

therefore, be liberally construed," Trawinski v. United Techns., 313 F.3d 1295, 1297

(11th Cir. 2002) (quoting Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir.

1998) (per curiam)), there is heightened pleading requirement when a plaintiff brings a §

1983 complaint against state officials acting in their individual capacities. Washington v.

Bauer, 149 Fed. Appx. 867, 870 (11th Cir. 2005) (citing Laurie v. Al. Court of Criminal

Appeals, 256 F.3d 1266, 1275-76 (11th Cir. 2001)).

Plaintiff's *pro se* Complaint contains several pleading irregularities, such as non-

compliance with the "simple, concise, and direct" pleading requirement of Fed. R. Civ. P.

8 and reliance on uncertified documents.[4]  The Court understands the facts from the

Complaint as follows:  Plaintiff alleges, without expressly specifying, that "Mental

Health" and "Agricultural" officials as well as Alverson conspired and illegally cancelled

his pest control contract #03-X-8002278, which he claims was effective until July 22,

2004, and renewable for two additional years.  Compl. at ¶¶ 19, 22.  Prior to the contract's

cancellation, in May 2004, Plaintiff claims that Sawyer, Tarver, Lynn, Bloch, DeBrow,

---

[4]The Court observes that Plaintiff has filed at least prior two actions in federal court
setting forth allegations in a similar deficient manner.  See e.g., C & J Associates Pest Control v.
Hornsby, 05cv557-WHA-DRB (Doc. #88, dated Dec. 6, 2006; #94, dated Dec. 28, 2006,
(adopting Recommendation of the Magistrate Judge)) (M.D. Ala. 2005); Duncan v. Jefferson
County Bd. of Educ., 05PWG442-S (Doc. #19 dated Oct. 31, 2006)) (N.D. Ala. 2005).  The
Court is concerned that Plaintiff's repeated filings which fail to comply with the Federal Rules of
Civil Procedure constitute an abuse of process.  In particular, the Court notes Plaintiff's claims in
these two previous actions closely mirror in form and substance those presented before the
undersigned in the instant case.  While the Court recognizes that Plaintiff is a *pro se* litigant,
Plaintiff's constant disregard and overt refusal to abide by the rules of procedure suggest to this
Court that Plaintiff's actions could and may warrant sanctions.

and Alverson prepared and distributed a proposal for pest control services for MHMR. The proposal opened on June 24, 2004 (hereinafter the June Proposal). Compl. at ¶¶ 23. Plaintiff alleges that he immediately protested the June Proposal in writing during May and June 2004. Id. at ¶ 24. On May 25, 2004, Plaintiff alleges that Sawyer wrote a letter to Nabers indicating that Bloch and "his Pesticide Division at [the] Agriculture Department," as well as Alverson "advised [MHMR] to contract pest control services through the use of request (sic) for proposal (sic)." Id. at ¶ 25. Plaintiff claims Nabers and King issued an opinion on June 11, 2004, indicating that pest control services were not "professional services be (sic) contracted by [p]roposal and must be bid under the State Competitive Bid Law 41-16-20." Id. at ¶ 26.

Plaintiff asserts that Defendants Sawyer, Tarver, Lynn, Cobb, Bressler, Bloch, DeBrow, and Alverson "knowing[ly] and willing[ly]" violated the opinion and ignored Plaintiff's protest by continuing to solicit pest control services for the June Proposal. Id. at ¶¶ 27-28. These Defendants, Plaintiff alleges, "evaluated the proposals for several weeks and exposed the bid prices to [Plaintiff's] competitors." Id. at ¶ 27. He alleges that Defendants Sawyer, Tarver, Lynn, Cobb, Bressler, Bloch, DeBrow, and Alverson learned from the bids that Plaintiff was a black minority owned vendor; Plaintiff was the lowest "responsible bidder;" and Plaintiff possessed a "Lawns [and] Ornamental License," which Plaintiff claims made his company more qualified than the other bidders. Id. at ¶ 29. Plaintiff claims that Barton and Knox did not possess this license. Id.

7

Plaintiff further alleges that Alverson and Knox "had/have a business relationship." Id.
He claims that Defendants refused to award the contract to his company based solely on
their intent to racially discriminate against him. Id.

On July 21, 2004, Plaintiff claims that Defendant Main, who replaced Nabers as
the Finance Director, issued a second opinion. Compl. at ¶ 30.[5] Two days later, Plaintiff
alleges that Sawyer issued a letter stating that the June Proposal will need to receive bids
in accordance with State law 41-16-21. Id. at ¶ 31. Plaintiff submitted a letter to
Defendants Sawyer and Cobb on September 9, 2004, protesting a new invitation to Bid
#04-X-6038553 (hereinafter the September proposal); this bid opened the following day.
Id. at ¶ 32. Plaintiff claims that he provided a copy of his protest letter to Defendants
Riley, Nabers, Main, and King, but "these [D]efendants failed to correct the improprieties
of Defendants Sawyer, Tarver, Lynn, Cobb, Bressler, Bloch, De[B]row, [and] Alverson."
Id. The following day, Plaintiff alleges that he went to the September proposal's opening.

Plaintiff alleges that his contract was cancelled on September 8, 2004. Compl. at ¶
33. On September 14, 2004, Plaintiff received a letter informing him that his contract
was cancelled. Compl. at ¶ 33. Plaintiff claims he submitted a letter to Sawyer
concerning his contract's cancellation on September 15, 2004. Compl. at ¶ 33. He
alleges that he also sent copies of his protest letter to Riley, Nabers, Main, and King, and
"these [D]efendants failed to correct the improprieties of Sawyer, Tarver, Lynn, Cobb,

_____

[5]The Court observes that Plaintiff does not describe the contents or relevance of the
second opinion.

8

Bressler, Bloch, De[B]row, [and] Alverson." <u>Id.</u>  On September 21, 2004, Plaintiff alleges that he submitted a protest letter to Sawyer and Cobb, concerning Bressler's failure to disqualify Knox at the September proposal's opening for not submitting an expired license or permit.  <u>Id.</u> at ¶ 34.  Plaintiff alleges that he sent a copy of this protest to Riley, Nabers, Main, and King, and "these [D]efendants failed to correct the improprieties of Sawyer, Tarver, Lynn, Cobb, Bressler, Bloch, De[B]row, [and] Alverson."  <u>Id.</u>  Plaintiff further alleges that Shelton and Knox were permitted to submit documents indicating that their permit or license was current after the September proposal's opening.  <u>Id.</u> at ¶ 35.  On October 1, 2004, Plaintiff alleges that he called Bressler to learn the results of the September proposal; Bressler informed Plaintiff that a majority of the contracts were awarded to Knox.  Compl. at ¶ 36.

## II.    DISCUSSION

Each motion to dismiss, though separately submitted, argues that Plaintiff's Complaint fails to state claims upon which the Court can grant relief and Plaintiff's claims are time barred.[6]  Defendants Riley, King, Sawyer, Tarver, Lynn, Cobb, Bressler, Bloch, DeBrow, Nabers, and Main also assert that they are entitled to qualified immunity.  Defendants Shelton and Knox add that as private actors, their actions did not occur "under color of state law;" therefore, the Court should dismiss Plaintiff's § 1983 claims

---

[6]The Court observes that Defendant Alverson filed a motion to dismiss all claims alleged in the Complaint pursuant to Rule 12(b)(6) (Doc. #39, #40), but failed to file a brief in support of his motion.

(Counts Two and Five) against them.

A.    Failure to State a Claim under Rule 12(b)(6)

In appraising the sufficiency of the Complaint, courts follow the well-established rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.  Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  The threshold for a complaint to survive a motion to dismiss is "exceedingly low."  Ancata v. Prison Health Servs., Inc., 769 F.2d 700, 703 (11th Cir. 1985).  However, although the complaint must be read liberally in favor of Plaintiff, the Court may not make liberal inferences beyond what has actually been alleged.  See Kramer v. Time Warner, Inc., 937 F.2d 767, 773 (2d Cir. 1991).  "[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal."  Oxford Asset Mgmt, Ltd. v. Jaharis, 297 F.3d 1182, 1188 (11th Cir. 2002).[7]

_____

[7]As indicated above, when governmental officers sued individually assert qualified immunity or are sued in their individual capacities under § 1983, as the state Defendants have in this case, controlling Eleventh Circuit precedent imposes a "heightened pleading" standard for the complaint instead of Rule 8's minimal notice pleading.  See GJR Invs., Inc. v. County of Escambia, 132 F.3d 1359, 1367-68 (11th Cir. 1998) ("We stress at this point, . . . that the heightened pleading requirement is the law of this circuit. . . .  Although the Supreme Court has held that courts may not impose a heightened pleading requirement in § 1983 cases involving municipalities, see Leatherman v. Tarrant County Narcotics Intelligence Coordination Unit, 507 U.S. 163, 167-68, 113 S. Ct. 1160, 1162, 122 L.Ed.2d 517 (1993), the Court specifically declined to extend its holding to cases involving individual government officials, see id. at 167, 113 S. Ct. at 1162, and we likewise decline to do so here.");  Wash v. Bauer, 149 Fed. Appx. 867, 870 (11th Cir. 2005) ("[T]here is a heightened pleading requirement when a plaintiff brings a § 1983 complaint against officials acting in their individual capacities.");  Swanson v. Pitt, 330 F. Supp. 2d 1269, 1281 n.31 (M.D. Ala. 2004) (recognizing that the Eleventh Circuit employs heightened pleading standards for § 1983 claims against state officials in their individual capacities).

Plaintiff's Complaint consists mostly of "conclusory allegations, unwarranted deductions of facts [and] legal conclusions masquerading as facts." Oxford Asset Mgmt., Ltd. v. Jaharis, 297 F.3d at 1188, cert. denied, 540 U.S. 872 (2003). While Plaintiff liberally attributes "discriminatory reasons" and conspiratorial actions to all 14 Defendants, he fails to allege the existence of any facts which would support a finding of such motives.

Specifically, with respect to Count One,[8] in Butts v. County of Volusia, 222 F.3d 891, 894-95 (11th Cir. 2000) (citing Jett v. Dallas Independent School Dist., 491 U.S. 701, 731-32 (1989)), the Eleventh Circuit Court of Appeals held that in cases involving state actors, there is no liability under § 1981, and those claims merge into the § 1983 claims. The undersigned thus finds that the § 1981 claim against all Defendants is due to be dismissed. Butts, 222 F.3d at 894.

Further, as against Alverson, Shelton, and Knox, the § 1981 claim for racial discrimination is due to be dismissed, as Plaintiff has failed to allege facts to support a finding of purposeful discrimination on the part of Alverson, Shelton, and Knox. Jackson v. BellSouth Telecomms, 372 F.3d at 1270. At best, the Complaint merely alleges that Shelton and Knox submitted a bid containing higher contract prices in both the June proposal and the September proposal, although they did not possess a current license at

---

[8]As noted above, the Court observes that the Complaint alleges Count One against all state Defendants except King. Compl. at ¶ 21. The Court therefore does not include King in analysis. The Complaint also only alleges Count One against Defendant Alverson. Id.

the time of submission; it also alleges that Knox was successful in the September proposal and "had/ha[s] a business relationship" with Alverson. Compl. at ¶ 27. These facts suggest nothing more than a business relationship; they do not show any intentional acts of discrimination based on Plaintiff's race. Gen. Bldg. Contractors Ass'n v. Pa., 458 U.S. 375, 387-88 (1982). Count One against Alverson, Shelton, and Knox is due to be dismissed.

In Count Two, Plaintiff asserts a claim under § 1983, alleging that Defendants acted under color of state law to violate his Fourteenth Amendment right to equal protection to be free from race discrimination in competitive bid contract and impaired his ability to make and enforce a pest control contract with MRMH under the same rights afforded white vendors. Compl. at ¶¶ 38, 39. Title 42 U.S.C. § 1983 provides that if an individual has been deprived of a right guaranteed to him by the Constitution or laws of the United States under color of state law, such an individual has a right to seek appropriate relief in a United States district court.[9] 42 U.S.C. § 1983. Thus, to prevail on

---

[9] Title 42 U.S.C. § 1983 provides, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

12

a civil rights action under § 1983, a plaintiff must show that he or she was deprived of a federal right by a person acting under color of state law.  Schultz v. Ashcroft, 174 Fed. Appx. 534, 538 (11th Cir. 2006).

Plaintiff's claim is alleged under the Equal Protection Clause.  "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike."  City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985) (quoting Plyler v. Doe, 457 U.S. 202, 216 (1982)).  To show an equal protection violation, a plaintiff must show that defendants acted with the intent to discriminate against him.  See McCleskey v. Kemp, 481 U.S. 279, 292 (1987); E & T Realty v. Strickland, 830 F.2d 1107, 1112-13 (11th Cir. 1987), cert. denied, 485 U.S. 961 (1988).

Plaintiff's generalized claim of discrimination does not state a claim in violation of the Equal Protection Clause of the Constitution.  The mere allegation that Defendants Sawyer, Tarver, Cobb, Bressler, Bloch, and DeBrow cancelled Plaintiff's contract, opened the June proposal and the September proposal, and allowed Knox to submit bids without a current license does not allege a factual basis for concluding there was a deliberate action against Plaintiff by Defendants based upon race.  Plaintiff alleges in a conclusory fashion that all Defendants' actions were taken for discriminatory reasons or were accompanied by discriminatory intent.  Based on the facts as presented in the

Complaint, Plaintiff actually has alleged only that the official at MHMR decided not to renew his contract and, instead, opened up a new bidding process to solicit and review new contract prices; because the process was not conducted properly, a second bidding process was opened subsequently. Nothing in the Complaint indicates that these actions were performed based on the race of Knox and Shelton. Thus, Plaintiff has failed to state a claim under § 1983. Count Two is due to be dismissed against all Defendants.

Plaintiff's claims against Riley, King, Nabers, and Main should also be dismissed for another reason. The claims against these four Defendants are based solely upon their status as supervisors. Under § 1983, liability will not be imposed solely on the basis of respondeat superior or vicarious liability. See Monell v. Dep't of Social Serv., 436 U.S. 658, 690-92 (1978); Harris v. Ostrout, 65 F.3d 912, 917 (11th Cir. 1995); LaMarca v. Turner, 995 F.2d 1526, 1538 (11th Cir. 1993), cert. denied, 510 U.S. 1164 (1994). Supervisory liability attaches under § 1983 only when the supervisor personally participates in the allegedly unconstitutional acts of his subordinates or where the actions of the supervising official bear a causal relationship to the alleged constitutional deprivation. Gonzalez v. Reno, 325 F.3d 1228, 1234 (11th Cir. 2003). "The causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so. The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant, and of continued duration, rather than isolated

14

occurrences." Braddy v. Fla. Dep't of Labor & Employment Sec., 133 F.3d 797, 802

(11th Cir. 1998) (quoting Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990)).

In this case, Plaintiff has presented no evidence that Riley, Nabers, Main or King

personally participated in the cancellation of Plaintiff's pest control contract, in the

solicitation and evaluation of bids for the June proposal and the September proposal, and

in the decision making process to award Knox the pest control contracts. Thus, Plaintiff's

Complaint must show that their actions bear a causal relationship to the cancellation of

Plaintiff's contract and the solicitation, review, and award of the pest control contracts to

Knox in order to hold these four Defendants liable. The Complaint fails to make the

requisite showing.

The Complaint indicates that Plaintiff mailed protest letters to Riley, Nabers,

Main, and King. It also alleges that Nabers and King produced an opinion on June 11,

2004, indicating that contracts for pest control services must be bid upon pursuant to State

Competitive Bid Law 41-16-20; Main subsequently issued an opinion on July 21, 2004.

Compl. at ¶¶ 26, 30. The Complaint fails to allege any further details explaining the

substance of Naber's and King's or Main's opinion. While the protest letters may have

placed Riley, Nabers, Main, and King on notice of Plaintiff's plight, Plaintiff has failed to

present any evidence indicating that racial discrimination was widespread and obvious

throughout the bidding process for the June proposal and the September proposal.

Moreover, Plaintiff's Complaint only alleges incidents occurring over a short period of

time, from May 2004 to October 1, 2004.  See Braddy, 133 F.3d at 802 ("A few isolated instances of harassment will not suffice, the 'deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant, and of continued deprivation.'").  Plaintiff has therefore failed to show that Riley's, Naber's, Main's, and King's actions bear a causal relationship to the cancellation of his contract and the solicitation, review, and reward of the pest control contracts at issue.  Count Two is due to be dismissed against Riley, Nabers, Main, and King for this reason.

Moreover, in alleging Count Two against Defendants Shelton and Knox, Plaintiff impliedly asserts that Shelton and Knox acted under color of state law.  See Compl. at ¶ 38.  The "under-color-of-state-law" element of § 1983 generally excludes from its reach "merely private conduct, no matter how discriminatory or wrongful."  Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50 (1999) (internal citations omitted).  Nonetheless, "[o]nly in rare circumstances will a private party be viewed as a state actor for § 1983 purposes."  Schultz, 174 Fed. Appx. at 538.  To act under color of state law within the meaning of § 1983, the private party must act either jointly or with or through a state actor.  Id. (citing Tower v. Glover, 467 U.S. 914, 920 (1984); Harvey v. Harvey, 949 F.2d 1127, 1130 (11th Cir. 1992)).  Plaintiff has failed to establish a sufficient nexus between Shelton and Knox and the state Defendants.

While the record reveals that the state Defendants had/have used Knox's pest services and Knox and Shelton submitted bids containing higher contract prices with

16

expired an license in the June proposal and the September proposal, these facts do not

demonstrate that Shelton and Knox acted jointly or with or through a state actor.

Moreover, nothing on the record demonstrates that they participated in the evaluation of

the bids for either the June proposal or the September proposal or in the decision making

process awarding Knox the pest control contracts.  Thus, the Court finds that Plaintiff has

failed to establish a sufficient nexus between Shelton's and Knox's acts and the state

Defendants.  The Complaint fails to show that Shelton's and Knox's acts were not

committed under color of state law.  See Schultz, 174 Fed. Appx. at 538 (finding that

plaintiff failed to establish a sufficient nexus between the private attorney and the state

defendants because the attorney was not present during the execution of an injunction–the

event from which plaintiff's § 1983 claims arose).  As Plaintiff fails to state a § 1983

claim against Shelton and Knox, Count Two is due to be dismissed against them.

In Count Three, Plaintiff asserts a claim under 42 U.S.C. § 1985 alleging that the

state Defendants as well as Shelton and Knox conspired under color of state law to violate

his right to make and enforce a contract with MHMR under the same rights afforded

white vendors.[10]  Compl. at ¶¶ 41-43.  To state a § 1985 conspiracy claim, a plaintiff must

---

[10]Although Plaintiff does not specifically assert its claim under subsection (3) of § 1985,
the Court construes Plaintiff's allegation under this provision, as subsections (1) and (2) are
irrelevant to Plaintiff's cause.  See 42 U.S.C. §§ 1985(1)-(2).  Title 42 U.S.C. § 1985(3) holds in
relevant part:

If two or more persons in any State or Territory conspire or go in disguise on the
highway or on the premises of another, for the purpose of depriving, either
directly or indirectly, any person or class of persons of the equal protection of the

allege:  (1) a conspiracy; (2) for the purpose of depriving, either directly and indirectly,

any person or class of persons of the equal protection of the law, or of equal privileges

and immunities under the laws; (3) an act in furtherance of the conspiracy; and (4) that a

person is either injured in his person or property or deprived of any right or privilege of a

citizen of the United States.  Denney v. City of Albany, 247 F.3d 1172, 1190 (11th Cir.

2001); Newsome v. Lee County, Al., 431 F. Supp. 2d 1189, 1201 (M.D. Ala. 2006)

(citations omitted).

The first element that Plaintiff must show in a conspiracy claim is an agreement

between the members of the alleged conspiracy.  See, e.g., Godby v. Montgomery County

Bd. of Educ., 996 F. Supp. 1390, 1412 (M.D. Ala. 1998).  Although the existence of a

conspiracy may be supported by circumstantial evidence, there must be some indication

---

laws, or of equal privileges and immunities under the laws; or for the purpose of
preventing or hindering the constituted authorities of any State or Territory from
giving or securing to all persons within such State or Territory the equal
protection of the laws; or if two or more persons conspire to prevent by force,
intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his
support or advocacy in a legal manner, toward or in favor of the election of any
lawfully qualified person as an elector for President or Vice President, or as a
Member of Congress of the United States; or to injure any citizen in person or
property on account of such support or advocacy; in any case of conspiracy set
forth in this section, if one or more persons engaged therein do, or cause to be
done, any act in furtherance of the object of such conspiracy, whereby another is
injured in his person or property, or deprived of having and exercising any right or
privilege of a citizen of the United States, the party so injured or deprived may
have an action for the recovery of damages occasioned by such injury or
deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3).

that the individuals were acting, in some sense, in concert. See, e.g., Burrell v. Bd. of Tr. of Ga. Military Coll., 970 F.2d 785, 789 (11th Cir. 1992), cert. denied, 507 U.S. 1018 (1993). Where there is no indication of an agreement to act against the constitutional rights of an individual, there is no cause of action under § 1985. Godby v. Montgomery County Bd. of Educ., 996 F. Supp. at 1412; (citing Briscoe v. LaHue, 663 F.2d 713, 723 (7th Cir. 1981), aff'd, 460 U.S. 325 (1983)).

Duncan's allegations regarding the existence of a conspiracy and Defendants' roles in the alleged conspiracy were vague, conclusory, and lacking in full support. Fullman v. Graddick, 739 F.2d 553, 557 (11th Cir. 1984) (holding that in civil rights conspiracy actions, conclusory, vague and general allegations of conspiracy are insufficient to support a claim of conspiracy); see also Ana Leon T. v Federal Reserve Bank of Chicago, 823 F.2d 928, 930 (6th Cir. 1987) ("The allegations must be more than mere conclusions, or they will not be sufficient to state a civil rights claim.") cert. denied, 484 U.S. 945, 108 S.Ct. 333 (1987); Chapman v. City of Detroit, 808 F.2d 459, 465 (6th Cir. 1986) ("It is not enough for a complaint . . . to contain mere conclusory allegations of unconstitutional conduct by persons acting under color of state law. Some factual basis for such claims must be set forth in the pleadings."). In particular, although a § 1985 conspiracy may involve private actors, see Griffin v. Breckenridge, 403 U.S. 88, 102-03 (1971), Plaintiff has not alleged that there was somehow a meeting of the minds between the state Defendants and Shelton and Knox to deny him of his civil rights. The Complaint

discusses the actions of Defendants Sawyer, Tarver, Lynn, Cobb, Bressler, Bloch, and

DeBrow in canceling his contract and in awarding the contracts to Knox and Shelton.  It

also provides that Knox and Shelton submitted bids to the June proposal and the

September proposal, despite having an expired license, and that those bids were higher

priced than Plaintiff's bids.  These facts, however, do not link Knox and Shelton's actions

to those of the state Defendants to show some sort of agreement either circumstantially or

directly.  Thus, the Complaint fails to show an agreement between the state Defendants

and Shelton and Knox.

       Plaintiff's § 1985 claim fails for another reason.  "The key factor in this [test] is

the second element, which specifically requires the plaintiff to show some 'class-based,

invidiously discriminatory animus behind the conspirators' action.'"  Newsome v. Lee

County, Ala., 431 F. Supp. 2d at 1201-02 (citing Griffin v. Breckenridge, 403 U.S. 88,

102 (1971)).  "This narrow intent requirement erects a significant hurdle for section

1985(3) plaintiffs."  Burrell v. Bd. of Trs. of Ga. Military Coll., 970 F.2d at 794.  In the

Complaint, Plaintiff asserts that the actions of the state Defendants in canceling his

contract and awarding the pest control contracts to Knox were motivated by his race.

Plaintiff fails to allege that Defendants' animus, if any, targeted African Americans as a

group, a requisite factor in the second element.  See Lucero v. Operation Rescue of

Birmingham, 954 F.2d 624, 628 (11th Cir. 1992) (finding that defendants' animus was

targeted neither at "women as a group" nor "pregnant women," but at that "class of

20

women seeking to exercise their . . . right to obtain an abortion and those persons who

would aid them in doing so").  Moreover, Plaintiff's bald assertion does not specifically

provide how Defendants' acted with an unusual prejudice or malevolent ill will.  Because

Plaintiff did not establish in his Complaint the first and second elements of a § 1985

conspiracy, Plaintiff has failed to state a claim under that provision.  Count Three is due

to be dismissed.[11]

In Count Four, Duncan asserts a claim under 42 U.S.C. § 1986 alleging that the

state Defendants as well as Shelton and Knox conspired under color of state law to impair

Plaintiff's rights to enjoy the same contractual rights afforded to white vendors.  Compl.

at ¶ 45.  Duncan alleges that the state Defendants furthered the conspiracy, even after

Plaintiff exposed Defendants improprieties and racial bias.  Id.

Section 1986 provides that:

> Every person who, having knowledge that any of the wrongs conspired to
> be done, and mentioned in [42 U.S.C. § 1985], are about to committed, and
> having power to prevent or aid in preventing the commission of the same,
> neglects or refuses so to do, if such wrongful act be committed, shall be
> liable to the party injured, or his legal representatives, for all damages
> caused by such wrongful act, which such person by reasonable diligence
> could have prevented.

42 U.S.C. § 1986.  Section 1986 is, in effect, a "derivative of § 1985," and a violation of

---

[11]The Court further notes, for the reasons discussed above, that as with § 1983, the theory of respondeat superior will not support liability under § 1985(3) against Riley, Nabers, Main, and King.  Swint v. City of Wadley, Ala., 5 F.3d 1435, 1451 (11th Cir. 1993) (citing Owens v. Haas, 601 F.2d 1242, 1247 (2d Cir. 1979), cert. denied, 444 U.S. 980 (1979)).

§ 1986 cannot be established "without establishing a violation of § 1985." Park v. City of Atlanta, 120 F.3d 1157, 1160 (11th Cir. 1997). Because Duncan has failed to establish a violation of § 1985, his § 1986 claim also must fail. Park v. City of Atlanta, 120 F.3d at 1160. Count Four is due to be dismissed for failure to state a claim.

Count Five asserts a claim under 42 U.S.C. § 1983 alleging that Defendants violated his Fourteenth Amendment right to equal protection and First Amendment right to freedom of speech concerning public health issues without fear of retaliation. To state a retaliation claim, a plaintiff must establish first, that his speech or act was constitutionally protected; second, that defendants' retaliatory conduct adversely affected the protected speech; and third, that there is a causal connection between the retaliatory actions and the adverse effect on speech. Bennett v. Hendrix, 423 F.3d 1247, 1250 (11th Cir. 2005), cert. filed, 74 U.S.L.W. 3452 (Feb. 6, 2006).

Plaintiff's Complaint fails to establish a claim under the First Amendment. Plaintiff does not explicitly identify any specific speech concerning public health issues subject to the First Amendment's protections, nor does he identify any retaliatory actions committed by Defendants against him. Thus, his allegation alone fails to state a claim under the First Amendment. Count Five against all Defendants is due to be dismissed.

Moreover, with respect to Shelton and Knox, as indicated above, section 1983 does not regulate private conduct. See Parratt v. Taylor, 451 U.S. 527, 535 (1981) (holding that a necessary element to a § 1983 action is that the defendant acts under color

22

of state law at the time of the constitutional deprivation), overruled on other grounds,

Daniels v. Williams, 474 U.S. 327, 330-31 (1986).  In other words, "the guarantee of free

speech and equal protection guard only against encroachment by the government and

'erect no shield against merely private conduct.'"  Hurley v. Irish-Am. Gay, Lesbian, and

Bisexual Grp. of Boston, 515 U.S. 557, 566 (1995) (quoting Shelley v. Kraemer, 334 U.S.

1, 13 (1948); Hurley v. NLRB, 424 U.S. 507, 513 (1976)).  As discussed above, Plaintiff

has failed to allege facts in his Complaint demonstrating that the actions of Shelton and

Knox had the character of state action.  Thus, the Court finds that Count Five fails to state

a claim against Shelton and Knox under the First Amendment.  Chapman v. City of

Detroit, 808 F.2d 459, 465 (6th Cir. 1986) ("It is not enough for a complaint . . . to

contain mere conclusory allegations of unconstitutional conduct by persons acting under

color of state law.  Some factual basis for such claims must be set forth in the pleadings.")

Count Five is due to be dismissed against Shelton and Knox.[12]

B.    Counts Six and Seven Under State Law

In Count Six, Duncan asserts that Defendants violated the Alabama Competitive

Bid Laws and the "Mental Health Purchasing Policies and Board of Examiners

Established Procedures."  Compl. at ¶ 50.  In Count Seven, he asserts that Defendants'

have intentionally interfered with Plaintiff's pest control contract with MHMR.  Compl.

---

[12]The Court declines to decide Defendants' qualified immunity and statute of limitations
defenses, given that Plaintiff clearly has failed to demonstrate the discriminatory intent necessary
to sustain his federal equal protection claims.

at ¶ 53.  Title 28, section 1367(c) of the United States Code provides that the Court may decline to exercise supplemental jurisdiction over a claim if "the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c).  In deciding whether to do so, the Court should "take into account concerns of comity, judicial economy, convenience, fairness, and the like."  Lewis v. City of St. Petersburg, 260 F.3d 1260, 1267 (11th Cir. 2001) (quoting Crosby v. Paulk, 187 F.3d 1339, 1352 (11th Cir. 1999)).

As shown above, all federal claims in this case are due to be dismissed.  The principles of comity and federalism suggest that the Court should not retain jurisdiction over state claims that only appear in this Court due to jurisdictionally barred federal claims.  The Court will not discuss these state claims in light of its recommendation that it declines to exercise supplemental jurisdiction over the state law claims.

## III.    CONCLUSION

Accordingly, the Magistrate Judge RECOMMENDS that Defendants' motions to dismiss (Doc. #18, #29, #31, #33, #39, #40, #45,) are GRANTED WITH PREJUDICE as to Counts One, Two, Three, Four and Five.  Having recommended the dismissal of the federal claims, the Magistrate Judge further RECOMMENDS that the Court DECLINE to exercise supplemental jurisdiction over the state law claims in Counts Six and Seven.  28 U.S.C. § 1367(c)(3); Mergens v. Dreyfoos, 166 F.3d 1114, 1119 (11th Cir. 1999).  It is further

24

ORDERED that Final Judgment be entered against the named Plaintiffs – C& J Associates Pest Control and Curtis Duncan – and in favor of the named Defendants:  Bob Riley; Drayton Nabers; James Main; Troy King; Kathy Sawyer; Courtney Tarver; June Lynn; Judy Cobb; Ray Bressler; John Bloch; Joe DeBrow; Bruce Alverson; Linda Shelton, and Knox Pest Control.  It is further

ORDERED that the parties are DIRECTED to file any objections to the said Recommendation by **April 5, 2007**.  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation objected to.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  Nettles v. Wainwright, 677 F.2d 404 (5th Cir. 1982).  See Stein v. Reynolds Securities, Inc., 667 F.2d 33 (11th Cir. 1982).  See also Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981) (en banc), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

DONE this the 23rd day of March, 2007.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE