RECEIVED IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
2007 APR 26  P 11: 42    NORTHERN DIVISION

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DIST OF ALA

C&J Associates Pest Control,

CURTIS DUNCAN

Plaintiff,

VS.                                          CV-06-884-MEF

BOB RILEY
DRAYTON NABERS
JAMES MAIN
TROY KING
KATHY SAWYER
COURTNEY TARVER
JUNE LYNN
JUDY COBB
RAY BRESSLER
JOHN BLOCH
JOE DEBROW
BRUCE ALVERSON
LINDA SHELTON
KNOX PEST CONTROL
et al.
DEFENDANTS

PLAINTIFF'S OBJECTIONS TO THE MAGISTRATE JUDGES'S

RECOMMENDATION

Comes now Pro-Se Plaintiff Curtis Duncan, Sole Proprietor/Owner D.B.A. C & J Associates Pest

Control respectfully objects to the Magistrate Judge Wallace Capel, Jr. Recommendation because it is

contrary and erroneous to the material facts filed in Plaintiff's Complaint, Plaintiff's Motion in

Opposition to Defendant's Motion to Dismiss and other Motions filed by Plaintiff on Civil Docket

06-884-MEF. Also the Magistrate Judge Recommendation is contrary and or erroneous to the Federal Rules and Procedures and existing law. In order to properly review Plaintiff's Objections the District Judge must review the entire civil docket.

By reviewing the entire civil docket, Your Honor will discover that this Court and the Magistrate Judge has an impermissible bias for the Plaintiff who is representing himself Pro-Se. This Court and the Magistrate Judge has abused his discretion by issuing erroneous rulings that has no respect for Plaintiff statutory rights as Pro Se under 28 U.S.C. 1654 to self-representation in Federal Court. The right to self representation "is a right of high standing, not simply a practice to be honored or dishonored by a Court depending on its assessments of the desiderata of a particular case". Implicit in the right to self representation is an obligation on part of the Court to make reasonable allowances to protect Pro Se litigants from inadvertent and forfeiture of important rights because of their lack of legal training. While the right "does not exempt a party from compliance with the relevant rules of procedural and substantive law," it should not be impaired by harsh application of technical rules. Trials Courts have been instructed to read Pro Se papers liberally and allow amendment of Pro Se complaints "fairly and freely". Plaintiff submits the following cases to support motion, Traguth v. Zuck. Cite as 710 F. 2d 90 (1983); Birl v. Estelle, 660 F. 2d. 592, 593 (5th Cir. 1981); Haines v. Kerner, 404 U.S. at 520, 92 S. Ct at 595; Holmes v. Golden, 615 F. 2d83, 85 (2d Cir, 1980). This Court and he Magistrate Judge erroneous rulings are contrary to law and would make any reasonable person question his impartiality for the Defendants and their Attorneys. This lack of impartiality demonstrated by this Court and the Magistrate Judge has prevented Plaintiff who is representing Pro Se from receiving a fair hearing of his Complaint. The following are some of the erroneous rulings made by this Court and the Magistrate Judge from the inception of this lawsuit to the present.

1.  This Court and the Magistrate Judge have demonstrated your impermissible bias for the Defendants and their Attorneys by granting every motion filed by the Defendants. The Defendants filed for an extension of time to file an answer. See (Doc. # 12, 13, 15, 16, 20) Magistrate Judge Mark Fuller granted the extension without any questions or scrutiny. See (Doc. #21, 28)

2.  Magistrate Judge Fuller arbitrarily abused his discretion by issuing an Order instructing Plaintiff to secure a licensed attorney by November 29, 2006 or Plaintiff lawsuit would be dismissed. The Magistrate Judge falsely identified Plaintiff Company as a corporation. See (Doc. 27) Plaintiff submitted documentation identifying himself as the Sole-Proprietor of C & J Associates Pest Control. Plaintiff questioned the Magistrate Judge were in Plaintiff's Complaint did he interpret Plaintiff company to be a corporation? Where in the Complaint does corporation appear? See (Doc. #38)  The Magistrate Judge never answered what was his source for this erroneous Order? But issued an Order that Plaintiff is not required to secure a licensed attorney. See (Doc. #41)

3.  Plaintiff filed Motion for Default Judgment against Defendants Alverson, Bressler, Cobb, Lynn, Sawyer, Tarver and King. See (Doc. #35, 37) The Defendants June Lynn, Judy Cobb, Courtney Tarver summons were served on October 6, 2006 and answer was due on October 26, 2006 (Doc. #5). Defendants Kathy Sawyer and Ray Bressler summons were served on October 5, 2006 and answer was due on October 25, 2006 (Doc. #7). The Defendants attorney Benjamin Albritton filed a Motion for Extension of Time to file Response/Reply for Lynn, Cobb, Bressler, Sawyer, Tarver and Troy King on October 27, 2006 (Doc. #16). Attorney Albritton filed (Doc. #16) late beyond the due dates of October 25, 26, 2007 for the summon answer. Attorney Albritton gives no answer why he filed his Motion for Extension late.

Defendant King was issued a summons on October 4, 2006 (Doc. #2) the same day as the other Defendants. Defendant King avoided being served his summons until November 2, 2006 (Doc. #23) for 28 days. The docket record shows that Attorney General Troy King, Deputy Attorney General Courtney Tarver was mailed a CMRRR with a copy of the complaint on October 4, 2006 (Doc #2). The docket clearly shows Attorney Albritton and King knew when Mr. Albritton filed (Doc. #16) that King was a Defendant in this lawsuit. A litigant can not avoid been served a summons. Attorney Albritton filed a Response to the Show Cause Order on February 2, 2007 (Doc. #65) stating that the response due date was inadvertently and erroneously placed on his calendar as November 21, 2007 when in fact he requested November 17, 2007 and the Court granted him November 17, 2007. The other government officials who are also Defendants in this lawsuit had the same due date of November 17, 2007 as Attorney Albritton clients. Attorney Albritton stated in (Doc. #16) that his clients and the other Defendants need more time to prepare a joint defense  Attorney Albritton once again file his response late by three days. It is apparent after reviewing the docket record that Attorney Albritton and his clients do not have a meritorious defense and have in bad faith established a pattern of filing their response to the summons late twice. These are the same Defendants who have obstructed Plaintiff from viewing a public bid file for over two years and their Attorney Albritton who also failed to attend the Court Ordered Parties Meeting of January 12, 2007. Defendant Bruce Alverson summons was issued on October 3, 2006 (Doc. #2). Mr. Alverson was served on October 10, 2006 his response due on October 30, 2006 (Doc. #9). Attorney William Alverson filed his father response late on October 31, 2006 asking for an extension of time until November 17, 2006 (Doc. #20). Attorney Alverson states in his Motion for an Extension of Time that he needed to coordinate a joint defense with the other Defendants.

Attorney Alverson displayed no due diligence to file his future motions on time. It is clear

from docket records that all the Defendants asked for an extension of time so they could

develop a united defense, yet Mr. Alverson claims he did not know the Court had ordered all

the Defendants to file their response by November 17, 2007. Also it is mandatory that all

attorneys be registered in accordance with General Order 04-3164 to Electronic Noticing in the

Middle District of Alabama. Attorney Alverson have clearly demonstrated that that his client

does not have a meritorious defense and have in bad faith established a pattern of filing his

response to the summons late twice. Attorney Alverson failed to attend the Court Ordered

parties Meeting of January 12, 2007 and the Court Ordered Scheduling Conference on January

29, 2007. Magistrate Judge Capel arbitrarily abused his discretion by denying Plaintiff's

Motion for Default based on the material facts and case law. See (Doc. # 66) Plaintiff filed

Objections to the Magistrate Judge Recommendation. See (Doc. # 67) Your Honor arbitrarily

abused your discretion basing your decision on the material facts of the civil docket and case

law.

4. Plaintiff filed a Motion for the Magistrate Judge to Strike or Stay the Defendants Motions to

Dismiss and Issue an Order to Compel the Defendants to permit Plaintiff to View and Copy the

Bid File. See (Doc. # 34) Plaintiff filed a Motion for Instruction from the Magistrate Judge.

See (Doc. # 48) Plaintiff filed a Motion in Response and Brief in Opposition to the Defendants

Motion to Dismiss. See (Doc. # 50) The Magistrate arbitrarily abused his discretion by issuing

Order (Doc. #49, 69) not to compel the Defendants to permit Plaintiff to view, inspect and

copy the public bid file. The Magistrate Judge erroneously ruled that Plaintiff was asking for

an Order for discovery, when in fact Plaintiff was asking for the Court to issue an Order

concerning his rights under Alabama Open Records Statute 36-12-40, 36-12-41 and the Federal

Statute Freedom of Information. Your Honor erroneously cites Moore v. Potter, 141 Fed. Appx. 803, C.A. which does not deal with the issue where State officials have abused their powers in preventing a Plaintiff or the Public from inspecting, viewing copying a public bid file. Plaintiff have stated in his Complaint and Motions (Docs. #34, #48, #50) the Defendants have abused their power by improperly preventing Plaintiff from viewing, inspecting and copying the public bid files for over two years. Their goals are to prevent Plaintiff from uncovering their conspiracy and their specific roles in the conspiracy, to hinder Plaintiff abilities to litigate his lawsuit, to write his Complaint, amend his Complaint, to respond to frivolous and fraudulent Motions to Dismiss, etc. The Magistrate Judge failed to address these issues before responding to the Defendants Motion to Dismiss, before the Parties meet for the scheduling of the case. The Magistrate Judge erroneous Orders (Doc. # 49, 69) violates Plaintiff rights to have to a Judicial Review Hearing in accordance with 28 U.S.C 2201 Declaratory-Judgment Statute or 28 U.S.C. 1651(a) 2241, 2254 Writ of Mandamus, Federal Rule 6(b) and Federal Statute U.S.C. 1654 that the Defendants permit Plaintiff to view, inspect and copy the public files concerning this lawsuit (Doc. #34, #48, #50). The Magistrate Judge erroneous failed to issue an Order to have a Judicial Review Hearing concerning these issues. The Magistrate Judge even erroneous threaten to sanction Plaintiff for filing Motions (Doc. # 34, 48, 50). Plaintiff submit N.L.R.B v. Robbins Tire & Rubber Co., 437 U.S. 214, 98 S. Ct. 2311, 57 L. Ed.2d 159 (1978) as to the appealability of requests under the Freedom of Information Act, the Supreme Court stated that unlike ordinary discovery disputes in which rulings are generally not appealable until the conclusion of the proceedings, an agency's denial of a request under the Freedom of Information Act is immediately reveiwable in district court, and the district court's decision can then be reviewed in the court of appeals. The District

Judge must over turn the Magistrate Judge erroneous decision not to compel the Defendants to permit Plaintiff to view, inspect and copy the public bid file in question. The District Judge must over turn the Magistrate Judge erroneous decision not let Plaintiff to amend, supplement his Complaint.

5.  Magistrate Judge Capel orders, decisions can only be described as egregious and hostile. The Magistrate Judge Recommendation is 26-pages of double talk, containing false statements about true facts and merits of Plaintiff's Complaint, Plaintiff's Opposition to Defendants Motion to Dismiss and the remaining motions filed by the Plaintiff. The Magistrate Judge because of his impermissible bias for the Defendants and their Attorneys have entered Recommendations in favored of the Defendants not based on the material facts of the Complaint, but on the false and fraudulent Motions of the Defendants. The Magistrate Judge falsely states on page 2 of the Recommendation that Plaintiff's Complaint arises from its unsuccessful bid on State of Alabama contracts for termite treatment projects at the Mental Health and Mental Retardation. Plaintiff's Complaint was for General Pest Control for Mental Health. The Magistrate Judge simply copied this from Magistrate Deloris Boyd Recommendation from a another lawsuit

6.  Plaintiff submits the following in opposition to the Magistrate Judge Recommendation. This the nature of the action and factual allegations brought by the plaintiff because Mental Health officials and their Consultant Bruce Alverson and Agricultural officials conspired and illegally canceled plaintiff's pest control contract with Mental Health that was bidden under the Alabama Competitive Bid Law 41-16-20.The Defendants advertised and exposed bid prices for a fraudulent Proposal Pest Control Services for Mental Health and Retardation under the guise that it was a Proposal. Plaintiff protested orally and in writing to the defendants about their

illegal actions, before plaintiff contract was cancelled and before the illegal Proposal was

opened and prices exposed. The defendants knowingly and willingly violated 41-16-20 and 41-

16-51 in order to ensure that plaintiff would be under bidden by his competitors at a later bid.

Plaintiff submitted documentation of his oral and written protests of Mental Health officials, their

Consultant Bruce Alverson and Agricultural officials' improprieties to the Governor Bob Riley,

Finance Directors Drayton Nabers and James Main and the Attorney General Troy King.

Defendants Riley, Nabers, Main, and King have the statutory duty to ensure that State Officials

obey State laws and Purchasing Policies.

This contract importantly involves Federal Funds which pays for the pest control services for

Mental Health and Mental Retardation. The Defendants in their individual capacity intentional

went beyond the scope of their official and ministerial duties under the color of state law to violate

Plaintiff Constitutional Rights in the 14th Amendment to Equal Protection Clause and Civil Rights

under 42 U.S.C. 1981, 1983, 1985, 1986 by participating in a conspiracy to deprive Plaintiff of his

ability to make and enforce a contract with Mental Health and Mental Retardation perform Pest

Control Services. Defendants failed to perform their ministerial duties. Defendants are liable in

their individual capacity for monetary damages because they were operating beyond the scope of

their duties, by knowingly violating the State Competitive Bid Law, Purchasing Policies, Bid

Specifications and violating plaintiff constitutional and civil rights. Plaintiff is suing the

Defendants in their official capacity because the Court has the ability to issue an order to compel

the Defendants to perform their ministerial duties to reinstate or award Plaintiff the Pest Control

Contract that was illegally taken from after bid prices were exposed. Defendants in their

individual capacity do not enjoy the privilege of sovereign immunity from lawsuits, when they

operate beyond the scope of the duties. Plaintiff believes this lawsuit can be decided by the court

on the abundance of direct evidence and by the prima facie evidence that can found through the discovery process in the Defendants files and records. Plaintiff requests a trial by jury.

7. Plaintiff submits some of the letters that he cites in his Complaint. The Magistrate Judge has prevented Plaintiff from attaining all the letters that are in the Public bid file in question. Plaintiff had fire damage which destroyed some plaintiff documentation of Defendants discrimination which started as early as the year 2000 to 2005. Protest Letter June 25 2004 (Exhibit 1) Kathy Sawyer Letter to Drayton Nabers May 25, 2004 (Exhibit 2) James Main letter to Kathy Sawyer July 21, 2004 (Exhibit 3) Kathy Sawyer letter to Vendors July 23, 2004 (Exhibit 4) Plaintiff letter to Kathy Sawyer and Judy Cobb September 9, 2004 (Exhibit 5) Plaintiff letter to Kathy Sawyer and Judy Cobb September 21, 2004 (Exhibit 6) Courtney Tarver letter to Plaintiff September 24, 2004 (Exhibit 7) Plaintiff letter to Courtney Tarver September 29, 2004 (Exhibit 8). The Magistrate Judge has erroneous prevented Plaintiff from amending his Complaint by not allowing Plaintiff to view, inspect and copy the bid file. Plaintiff letters gives true factual of what Plaintiff allege in his Complaint.

8. Plaintiff filed Motions (Doc. #76, 78) informing this Court that Plaintiff was involved in traffic accident that broke his right arm and injured his neck which requires surgery. The Magistrate Judge and Your Honor abused your discretion by arbitrarily requiring Plaintiff respond by April 26, 2007. See (Doc. #77, 79) Plaintiff respond to Recommendation under duress, hardship. Due to Plaintiff's health, Plaintiff was not able to perform all the research necessary to respond to all the issues raised by the Magistrate Judge. Plaintiff had some family members type this response.

Respectfully submitted

*Curtis Duncan* 4-26-0

Curtis Duncan
Plaintiff, Pro Se
C&J Associates Pest Control
P.O. Box 8186
Montgomery, AL 36110
Phone: 334-467-6432

## CERTIFICATE OF SERVICE

I hereby certify that on April 26, 2007, I have served a true correct copy of the above and foregoing by first class, United States mail, properly address and postage prepaid, or hand delivered on defendants as follow:

Scott L. Rouse
Office of the Governor
600 Dexter Avenue
Montgomery, Alabama 36130
334-2427120 Phone
334-242-2335 Fax

Richard Cater, Esq.
State Finance Department
State Capitol
600 Dexter Avenue
Montgomery, Alabama 36130

Bill Garrett, Esq.
Ben Albritton, Esq.
Office of the Attorney General
11 South Union Street
Montgomery, Alabama 36130

Robert Russell
Alabama Dept. of Agriculture & Industries
1445 Federal Drive
Montgomery, Alabama 36107-1123
334-240-7118 Phone
334-240-7192 Fax

Robin Garrett Laurie, Esq.
Griffin Lane Knight, Esq.

Balch & Bingham
Po Box 78
Montgomery, Alabama 36101

William Leonard Tucker, Esq.
Page Scranton Sprouse
PO Box 1199
Columbus, Georgia 31902

William Alverson
ALBRITTONS, CLIFTON, ALVERSON,
MOODY & BOWDEN
P.O. BOX 880
Andalusia, Alabama 36420
Phone-334-222-3177

_Curtis Duncan 4-26 07_

Curtis Duncan
Plaintiff, Pro Se



# C & J Pest Control

P.O. Box 8186 • Montgomery, AL • 36110 • 334.201.5203

June 25, 2004

June Lynn, Advisory Attorney
Mental Health and Mental Retardation
RSA Union Building
100 North Union Street
Montgomery, Al 36130-1410

## PROTEST

Dear Ms. Lynn:

This letter serves as a protest to your request for proposal for Pest Control Services for Mental Health and Mental Retardation. We have written several letters for example dated October 12, 2003, November 11, 2003, March 5, 2004 concerning problems we have encountered with various facilities personnel and the Pest Control Consultant not performing in good faith their responsibilities in accordance to the Pest Contract. It appears that the Central Office does not hold them accountable for their non-performance in this contract and simply want to blame C&J Pest Control for their failures. You and the Central Office have chosen not to answer my letters and ignore real problems that exit because of non-performance of your personnel and your Pest Control Consultant. The facilities personnel and consultant who are not in compliance with the contract are historically put on the committee to write the restrictive pest control specifications, it my understanding that these same people alone with you and other Central Office personnel have found a way to circumvent 41-16-20 which requires all sealed bids be competitive bidden and awarded to the lowest responsible bidder. Historically pest control services have only been under 41-16-20, the legislative intent in passing the Competitive Law was to get the best quality service at the lowest possible price, and the executive authorities should carry out this intent to ensure fair and open competition. The single most important requirement of the Competitive Bid Law is the good faith of the officials charged in executing the requirements of the law. A bad motive, fraud or a gross abuse of discretion will vitiate an award whether made with specifications which are quite general or very precise.

It is my understanding that you and Mental Health officials have found a way to try make Pest Control Services a Professional Service Contract 41-16-51 and put us in same category of physicians, architects, attorneys, and other individuals or business entities offering the services of such individuals who possess a high degree of professional skill where the individual plays a decisive part. In order to legally put us into this category it should have the approval of the Finance Director with the advice of the Attorney General. I checked with both offices neither have taken a position on this matter, they referred me back to you. It is my understanding that the reason you and other Mental Health officials chose this process was because you would have the freedom to chose a company even with a higher price that you desired to have the contract because historically C&J Pest Control have been the lowest responsible bidder under 41-16-20. Any one who has experience in bidding process can see that this alleged Proposal is simply a Sealed Bid being masked as a Proposal so that you and Mental Health official can circumvent getting the lowest responsible bidder, so you can chose whoever you want to without any consequences. This alleged Proposal is virtually identical to the sealed bid contract I am performing now, except for some changes that was made which does not make any

rational sense to why these changes was made. A true Proposal for Professional Services would be where the personality of the individual plays a decisive part in the performance of the contract. Bruce Alvinson, and Mental Health officials have written detailed specifications instructing the Pest Control companies on what pesticides use, how to interpret pesticides labels, how often a building should be serviced, dictating what time to apply pesticides, etc. The Pest Control Companies virtually make no decisions in this proposal and is simply followings instructions of Mental Health and it consultant. This is not a true Proposal for Professional Service. I am currently still performing on a sealed bid contract that still has two renewals years.

The Courts of Alabama, even the Supreme Court of Alabama have constanently ruled what is considered a profession or professional services versus business services. Burkett v. Adams, 361 So.2d 1, 3 (Ala.1978). Specifically case concerning Pest Control Services Jerry W. Dobbins and Daniel W Enfinger, et al. v. Getz Exterminators of Alabama, Inc., a corp. Civ. 2071. We respectfully ask that this Proposal be cancelled for being in violation of 41-16-20 and 41-16-51 and honor the current contract with C&J Pest Control. The Proposal deadline should be extended until these legal questions are answered.

Sincerely,

Curtis Duncan



BOB RILEY
GOVERNOR

STATE OF ALABAMA

## DEPARTMENT OF MENTAL HEALTH
## AND MENTAL RETARDATION

**RSA UNION BUILDING**

100 N. UNION STREET
POST OFFICE BOX 301410
MONTGOMERY, ALABAMA 36130-1410



KATHY E. SAWYER
COMMISSIONER

May 25, 2004

Drayton Nabers, Jr.
Director of Finance
State Capitol
Montgomery, AL 36104

Re: RFP for Pest Control Services

Dear Drayton:

I learned yesterday that questions had been raised to you about the propriety of this department issuing a request for proposal for its facilities' pest control services. As you may be aware, over the past several years, DMH/MR has taken considerable steps to ensure quality services in this area, not only for obvious health reasons, but also for safety to the vulnerable populations we serve. This is a circumstance which may differ from the needs of most other state agencies. As a result, we have had extensive consultation with the Department of Agriculture and Industries which regulates pest control. That department recommended that to better meet our needs, that we contract with an expert in integrated pest management to help develop plans and monitor our pest control operations. For the first time, this fiscal year, we engaged such a contractor to work both with our staff and pest control service contractors.

With all of these consultations, we have come to understand that pest control is professional service. We were told this consistently from Agriculture and Industries Director of Food Safety and Consumer Division (which regulates pest control licensing and training) Dr. J.A. Bloch, from our integrated pest management expert, Mr. Bruce Alverson, and Dr. Fudd Graham in the Entomology Department at Auburn University's Extension Center. Further, the statutes and regulations governing the licensing of persons who engage in structural pest control, entomological work and related services sought by this department, refer to them as professional services. *See e.g., Alabama Code, 1975, §2-28-1 et seq., and Alabama Administrative Code, Chapter 80-10-9*, entitled "Professional Service". Pursuant to the current contracting law, professional services are required to be contracted through the use of requests for proposals. *Alabama Code, 1975, §41-16-72(4)(Supp. 2003)*. We are attempting to comply with this law.

Thank you for contacting us about this matter. I hope that this answers any questions or concerns which may have arisen. Please let us know if you concur with our position on this matter.

Sincerely,

Kathy E. Sawyer
Commissioner

KES/ct

Concur: _____    Non-concur: _____

EXhibit 3

OFFICE OF THE GOVERNOR



JAMES ALLEN MAIN
DIRECTOR OF FINANCE

(334) 242-7160
FAX: (334) 353-3300

BOB RILEY
GOVERNOR

STATE OF ALABAMA
STATE CAPITOL
MONTGOMERY, ALABAMA 36130

July 21, 2004

Commissioner Kathy E. Sawyer
Department of Mental Health and
 Mental Retardation
100 N. Union Street
Montgomery, Alabama 36130-1410

Re:  Exemption of Pest Control Services from the Competitive Bid Statute

Dear Ms. Sawyer:

        I have reviewed the position statements of the parties having an interest in this question.  It is my conclusion that pest control services are not professional services as that term is contemplated by the exemption provision of Section 41-16-21(a).  Contracts for such services must be bid.

                Sincerely,

                James Allen Main
                Director of Finance

JAM/dsn

cc:     Issac Kervin
        Jerry Carpenter
        Richard H. Cater



STATE OF ALABAMA
## DEPARTMENT OF MENTAL HEALTH
## AND MENTAL RETARDATION
**RSA UNION BUILDING**
100 N. UNION STREET
POST OFFICE BOX 301410
MONTGOMERY, ALABAMA 36130-1410

July 23, 2004



KATHY E. SAWYER
COMMISSIONER

BOB RILEY
GOVERNOR

C & J Associates
P. O. Box 8186
Montgomery, Alabama 36110

RE:   Exemption of Pest Control Services
      From the Competitive Bid Statute

Dear Vendor:

Due to a challenge from a vendor, the Department of Mental Health requested the Director of Finance to give an opinion as to whether or not pest control services would be competitively bid or put out for a request for proposal as a professional service contract.

The Finance Director has reviewed the position statements of the parties having an interest in this question and has determined that pest control services are not professional services as contemplated by Alabama Code, Section 41-16-21 (a), and has instructed the department to bid these services. Therefore, the department will not award a contract from the request for proposal, but will now bid the contract through its purchasing division.

You will receive notice of bids from our purchasing department. We encourage you to please submit your bids for our facilities.

Sincerely,

Kathy E. Sawyer
Commissioner

KES/JL/ceb

cc:   June Lynn
      Courtney Tarver
      Judy Cobb
      Bruce Alverson



# C & J Pest Control

P.O. Box 8186 • Montgomery, AL • 36110 • 334.201.5203

September 9, 2004

Ms. Kathy Sawyer
Commissioner
Mental Health and Mental Retardation
100 North Union Street
Montgomery, Al 36130-1410

Ms. Judy Cobb
Director of Purchasing
Mental Health and Mental Retardation
100 North Union Street
Montgomery, Al 36130-1410

Dear Ms. Sawyer & Ms. Cobb:

C&J exercises its rights as a vendor and hereby files a protest in connection with an Invitation-To-Bid #04-X-6038553 (hereinafter "ITB"). This ITB should be cancelled because of the following reasons: (1) The current contract to provide pest control services were awarded to C&J and subsequently renewed by the department. (2) June Lynn, Advisory Attorney for the Alabama Department of Mental Health and Mental Retardation, acted beyond the scope of her employment and authority by illegally not adhering to the Alabama Competitive Bid laws and thereby exposing bid prices. (3)There are specifications in the ITB that are unduly restrictive, unreasonable and not narrowly tailored to meet the departmental concerns but are oppressive to minorities and small business.

This ITB deals with a pest control contract initially awarded to C&J and in which the same is still actively performing. This contract became effective July 23, 2004 when the Alabama Department of Mental Health did not exercise its rights under a existing contract of its intent not to renew C&J services for pest control. At that time C&J accepted an extension of their current contract with the department to provide pest control services for an additional one-year-term, under the same conditions as the first contract stated.

After the above actions the department under the advice of June Lynn, Advisory Attorney, and acting out of the scope of her employment transferred pest control files from the purchasing department and initiated an illegal proposal process for the contract held by C&J. C&J vehemently opposed this process and under protest submitted a new bid on a contract it was currently performing. During this process June Lynn open sealed bids and disclosed the same to various individuals throughout the state thus exposing to competitors C&J offer to perform pest control services for the department. In answering C&J protest June Lynn actions were later reversed upon a finding by the Finance Director that pest control services are not professional services as contemplated by Ala.Code § 41-16-21(a), and instructed the department to bid these services. [Ex.1 attached hereto].

The ITB as it stands is unduly restrictive, unreasonable and not narrowly tailored to meet the departmental concerns but are meant to be oppressive to minorities and small business. One specification in the present ITB requires a PMPS to have an established office within fifty miles of each

facility they submit a bid. This specification as worded would appear to be in direct contradiction of the Alabama Competitive Bid Law. See Ala. Code § 41-16-70 The Alabama Competitive Bid Law provides in part that:

> "The Legislature finds and declares that the best interests of the taxpayers of Alabama are served when competition exists in the procurement of goods and services by state departments, boards, commissions, authorities, and instrumentalities of state government. Competitive bid requirements ensure that all citizens have the opportunity to compete for government procurements and it is imperative that officials charged with expending public funds conduct competitive processes, which are open to all interested and qualified persons and business. In order to ensure fair and open competition in the procurement of goods and services, this article shall be liberally construed." (Act 2001-956, p. 817)

The fifty mile specification is restrictive and unreasonable in that it requires bidders to acquire an office before they are allowed to submit a bid within fifty miles of any facility they will service. The ITB also requires proof of those locations before the bid my be presented or otherwise the bid will be rejected. This specification is not narrowly tailored to meet any known objective of the department and favors large companies with offices within the areas of concern. This requirement has already been found to be unreasonable and removed from prior ITB.

Another restrictive and oppressive measure is the requirement of certain brand equipment. An acquisition that uses a brand name description or other purchase description to specify a particular brand name, product, or feature of a product, peculiar to one manufacturer does not provide for full and open competition regardless of the number of sources solicited. The bid specification show that a "herd spreader," is required. The specification goes so far as to make a pitch for a company that is located in Indiana and outside of the State of Alabama. There are no scientific facts that would support the notion that this spreader is superior to any other spreader on the market and again meets no known governmental concern.

For all of the above reasons C& J is requesting that the Department of Mental Health immediately cancel ITB #04-X-6038553 because it violates Alabama law and the same be allowed to continue under its present contract to provide pest control services.

Yours truly,

*Curtis Duncan*

Curtis Duncan/Owner

CD/cd
cc:
Honorable Governor Bob Riley
Honorable Troy King
Director of Finance James Man
Director of Ethics State of Alabama
Director Minority of Business Affairs



STATE OF ALABAMA
# DEPARTMENT OF MENTAL HEALTH
## AND MENTAL RETARDATION
### RSA UNION BUILDING
100 N. UNION STREET
POST OFFICE BOX 301410
MONTGOMERY, ALABAMA 36130-1410



KATHY E. SAWYER
COMMISSIONER

BOB RILEY
GOVERNOR

July 23, 2004

C & J Associates
P. O. Box 8186
Montgomery, Alabama 36110

RE:    Exemption of Pest Control Services
       From the Competitive Bid Statute

Dear Vendor:

Due to a challenge from a vendor, the Department of Mental Health requested the Director of Finance to give an opinion as to whether or not pest control services would be competitively bid or put out for a request for proposal as a professional service contract.

The Finance Director has reviewed the position statements of the parties having an interest in this question and has determined that pest control services are not professional services as contemplated by Alabama Code, Section 41-16-21 (a), and has instructed the department to bid these services. Therefore, the department will not award a contract from the request for proposal, but will now bid the contract through its purchasing division.

You will receive notice of bids from our purchasing department. We encourage you to please submit your bids for our facilities.

Sincerely,

Kathy E. Sawyer
Commissioner

KES/JL/ceb

cc:    June Lynn
       Courtney Tarver
       Judy Cobb
       Bruce Alverson





# C&J Pest Control

**P.O. Box 8186 • Montgomery, AL • 36110 • 334.201.5203**

September 21, 2004

Kathy Sawyer
Commissioner of Mental Health
And Mental Retardation
100 North Union Street
Montgomery, Alabama 36130-1410

Ms. Judy Cobb
Director of Purchasing
Mental Health and Mental Retardation
100 North Union Street
Montgomery, Alabama 36130-1410

Dear Ms. Sawyer and Ms. Cobb:

This letter serves as a protest to ITB # 04-X-6038553 bid opening. There were several companies that did not turn in a license to operate a pest control business and/or License/Permit to perform certain type of pest control. The bid specifications on Page 4 of the supplement to ITB require that:

> LICENSES:
> PMPS must be licensed to perform pest control service by the State of Alabama, Department of Agriculture. A copy of each license must be attached to the bid or the bid will be rejected. PMPS must also have an ornamental and turf license/permit to provide the services required for treatment of the grounds beyond those immediately adjacent to buildings. The person or firm's name and a copy of their license/permit must be submitted with each bid. (EX. 1 Copy of Specifications requiring that all licenses/permit must be submitted with bid or bid will be rejected.)

The bids which did not have all of the required license and permits submitted with the ITB should have been rejected. Based upon my review of the bid file/record in the presence of Ray Bressler, C&J Pest Control, Lewis Pest Control and Topco Pest Control are the only responsible bidders to this ITB who turned in all licenses and permits as required by the bid specifications. Knox Pest Control did not attach an Ornamental and Turf license and the permit which was submitted had an expired date of March 28, 2004. Cooks Pest Control and Alabama Professional Services did not attach any licenses or permits. C&J is the lowest responsible bidder for all facilities except for Greil, and the bids that did not have all the required licenses/permits should have been rejected during the bid opening and their prices should have not been exposed. This was a standard procedure used by Mental Health Purchasing and the

State of Alabama during my many years of submitting bids to the state. Over the last few years Mental Health Purchasing have deviated from this standard procedure, while the State of Alabama still adheres to this process. The procedure was established to help the buyer determine the lowest responsible bidder. The bidder who was not responsive in submitting all the required information with the bid, was eliminated immediately, and was so done to keep the process evenly handed, in order for the buyer can make decision on the information before him and to keep the Purchasing Department from been involved in any appearance of impropriety after the bid opening. By not following this well established procedure, Mental Health Purchasing appears to have violated the Competitive Bid Law.

Your month-to-month arrangement/offer to C&J dated August 18, 2004 shows in paragraph #3 the following:

> Until another vendor is selected following the bidding process on this upcoming ITB which we envision being issued within another week or so, the department is interested in engaging in a continued relationship with your company to provide pest control services on a month-to-month basis, just until our next contractor(s) selection(s).

This part of the paragraph clearly shows your intention in selecting "another" vendor, other than the lowest responsible bidder if that bidder happens to be C&J. (Ex.2 Copy of Month-to-Month Offer from Mental Health.)

Even with the aforementioned, C & J still contends that it has a valid contract #80002278 with Mental Health. We have not received any response to our letters dated September 9, 2004 and September 15, 2004, so we again respectfully request a show cause hearing within 5 days. If you refuse to meet with us or fail to respond by this date we have no other choice but to protect our rights etc. by pursuing all legal remedies available to us.

Sincerely,

Curtis Duncan
Curtis Duncan

Cc:
Director Minority of Business Affairs
Governor Bob Riley
Attorney General Troy King
Director of Finance James Main
Director of Examiners of Public Accounts Ronald L. Jones
Director of State Bar Association
Director of Ethics Ray Sumner

THE PMP WILL PROVIDE EACH FACILITY WITH A COMPLETE LIST OF ALL CURRENT LABELS AND MATERIAL SAFETY DATA SHEETS FOR ALL PESTICIDES, AND RODENTICIDES TO BE USED. A LIST OF ALL BRAND NAMES OF PESTICIDE APPLICATION, EQUIPMENT, RODENT BAIT STATIONS, INSECT AND RODENT MONITORS, AND TRAPPING DEVICES, PEST SURVEILLANCE AND DETECTION EQUIPMENT AND ANY OTHER PEST MANAGEMENT DEVICES OR EQUIPMENT THAT MAY BE USED TO PROVIDE THE PEST MANAGEMENT OF THESE FACILITIES. THIS LIST SHALL BE UPDATED CONTINUOUSLY FOR CURRENT AND ANY NEW PRODUCTS THROUGHOUT THE LIFE OF THIS CONTRACT WITH THE MOST RECENT INFORMATION AVAILABLE TO THE INDUSTRY.

7. EQUIPMENT NECESSARY FOR THE PREVENTIVE FIRE ANT TREATMENTS:
ALL EQUIPMENT MUST BE APPROVED BY MH/MR PEST CONTROL CONSULTANT AND DR. GRAHAM, ALABAMA EXTENSION SERVICE, AUBURN UNIVERSITY. RECOMMENDED SPREADER FOR APPLICATION: HERD MODIFIED FIRE ANT BAIT SPREADER FOR LARGE AREAS. THIS SPREADER IS AVAILABLE FROM HERD SEED SPREADER, INC. IN LOGANSPORT, IN 46947. INJECT PROBE FOR MOUND TREATMENT CAPABLE OF TREATING THE BOTTOM OF THE MOUND (2 - 3 FT.) WITH THE TREATING UNIT.

8. SCHEDULE FOR REGULAR SERVICE INSPECTIONS:
THE REGULAR SERVICE TIMES FOR EACH FACILITY WILL BE 8:30 A.M. UNTIL 4:00 P.M. IF ADDITIONAL SERVICE IS NEEDED AT ANY OTHER TIMES, IT MUST BE APPROVED BY THE FACILITY DIRECTOR OR DESIGNEE.
EXAMPLE: SUMMER FIRE ANT CONTROL ON EXTREMELY HOT DAYS SHOULD BE APPLIED AT LATER HOURS.

LICENSES:
PMPS MUST BE LICENSED TO PERFORM PEST CONTROL SERVICE BY THE STATE OF ALABAMA, DEPARTMENT OF AGRICULTURE. A COPY OF EACH LICENSE MUST BE ATTACHED TO THE BID OR THE BID WILL BE REJECTED. PMPS MUST ALSO HAVE AN ORNAMENTAL AND TURF LICENSE/PERMIT OR HAVE UNDER CONTRACT A PERSON OR FIRM WITH AN ORNAMENTAL AND TURF LICENSE/PERMIT TO PROVIDE THE SERVICES REQUIRED FOR TREATMENT OF THE GROUNDS BEYOND THOSE IMMEDIATELY ADJACENT TO BUILDINGS. THE PERSON OR FIRM'S NAME AND A COPY OF THEIR LICENSE/PERMIT MUST BE SUBMITTED WITH EACH BID.

EXPERIENCE:
BIDDERS MUST HAVE A MINIMUM OF FIVE (5) YEARS EXPERIENCE RELATED TO THE PEST CONTROL INDUSTRY. LENGTH AND TYPE OF QUALIFYING EXPERIENCE MUST BE SUBMITTED WITH THE BID.

REFERENCES:
BIDDERS MUST PROVIDE A MINIMUM OF FIVE (5) BUSINESS REFERENCES FOR WHOM THEY HAVE PROVIDED PEST CONTROL SERVICE WITHIN THE PAST THREE (3) YEARS. EACH REFERENCE'S BUSINESS NAME, ADDRESS, TELEPHONE NUMBER, A CONTACT PERSON, AND THE PERIOD OF TIME THE SERVICE WAS PROVIDED, MUST BE LISTED. THIS LIST OF REFERENCE INFORMATION MUST BE SUBMITTED WITH THE BID, OR THE BID WILL BE REJECTED.

DOCUMENTATION:
DOCUMENTATION OF ALL SERVICE MUST BE PROVIDED BY THE PMP. DOCUMENTATION MUST INCLUDE, BUT IS NOT LIMITED TO, DAILY SERVICE, CALL-BACKS, EMERGENCY VISITS, AND MONTHLY REPORTS. DOCUMENTATION REQUIREMENTS FOR EACH FACILITY MUST BE REVIEWED WITH THE PEST CONTROL OFFICER OR HIS/HER DESIGNEE.

4

STATE OF ALABAMA

# DEPARTMENT OF MENTAL HEALTH
# AND MENTAL RETARDATION

### RSA UNION BUILDING
100 N. UNION STREET
POST OFFICE BOX 301410
MONTGOMERY, ALABAMA 36130-1410





BOB RILEY
GOVERNOR

KATHY E. SAWYER
COMMISSIONER

August 18, 2004

Mr. Curtis Duncan, Owner
C & J Pest Control
P.O. Box 8186
Montgomery, AL 36110

RE:    Pest Control Services & Response to Your August 10, 2004 Letter to Ray Bressler

Dear Mr. Duncan:

While we appreciate your willingness to work with us, let us be clear that the Department of Mental Health and Mental Retardation (DMH/MR) has not offered and will not offer extension of your contract which expired July 22, 2004. Further, as you should be aware from our letter sent out to you on July 23, 2004, an invitation to bid (ITB) for our departmental pest control services will soon be issued. This ITB was necessary because a complaint was made to the Finance Director under the bid law that the request for proposals for pest control was not appropriate. Since the Finance Director took the position that pest control is not a professional service and therefore should be bid, this department is in the process of finalizing and issuing an ITB for these services.

Seeing as you responded to our earlier request for proposals, it should have been clear to you that we did not intend to exercise the option we have to renew your contract for another year. To the extent it is still unclear, please let this letter serve as your notice that DMH/MR is not extending your contract for another year.

Until another vendor is selected following the bidding process on this upcoming ITB which we envision being issued within another week or so, the department is interested in engaging in a continued relationship with your company to provide pest control services on a month-to-month basis, just until our next contractor(s) selection(s). The month-to-month contract terms and conditions would be the same as those under the contract with you that expired July 22, 2004 (contract number 2002278), except that the term length is only month-to-month. If you find this month-to-month arrangement agreeable, please so indicate by signing on the line below and by faxing or otherwise delivering it to the Purchasing Office of the Alabama Department of Mental Health & Mental Retardation, 100 N. Union St. Montgomery, AL 36130, such that it is received there no later than Friday, August 20, 2004 at 3:00 P.M. This month-to-month arrangement will begin immediately upon our receipt of your signed agreement thereto. If you have further questions about this, please contact Purchasing Director Judy Cobb at (334) 242-3510.

Sincerely,

Judy Cobb
Purchasing Director

JC/CWT/sbh
cc:  Courtney Tarver

*See back page*

_____   Agree to month-to-month

_____   Do not agree to month-to-month

STATE OF ALABAMA

# DEPARTMENT OF MENTAL HEALTH
# AND MENTAL RETARDATION

RSA UNION BUILDING
100 N. UNION STREET
POST OFFICE BOX 301410
MONTGOMERY, ALABAMA 36130-1410



BOB RILEY
GOVERNOR

KATHY E. SAWYER
COMMISSIONER

September 24, 2004

Mr. Curtis Duncan, Owner
C & J Pest Control
P.O. Box 8186
Montgomery, AL 36110

RE:    Response to September 9, September 15, and September 21, 2004 Letters to Commissioner
Sawyer and oOthers Regarding Pest Control Services

Dear Mr. Duncan:

This letter is in response to the three, above-referenced letters you have sent regarding the bid
process on this department's pest control contract for 2004-2005.   You submitted a letter of protest dated
September 8, 2004 to the ITB prior to bids being opened on September 10, 2004.  You later submitted
two bid protests following the opening of the bids in the latter two letters.  This letter will respond to all
three.

## Preopening Protest (September 9, 2004 letter)

A bid protest prior to the opening of the bids is invalid.  Nevertheless, these are our responses to
your concerns:

**C & J Contention 1.  DMH/MR renewed C & J's contract which was scheduled to end July 22, 2004.**

**DMH/MR Response—**Well prior to the expiration date of July 22, 2004, DMH/MR sent to you and
numerous other pest control companies in Alabama a request for proposals (RFP) for this department's
pest management for the upcoming contract year beginning July 23, 2004 through July 22, 2005.
Although you submitted a proposal in response to that RFP, you protested it.  Ultimately, after challenge
to the Finance Director, and  insistence that an invitation to bid (ITB) be done instead to secure a contract,
the Finance Director agreed, you and other vendors were so notified in a July 23, 2004 letter and
preparation of an ITB began to secure pest control for this new contract year.

By this time, your contract had ended on July 22, 2004.  Upon a verbal inquiry into whether you would
consider continuing conducting service on a month-to-month basis until the ITB could be issued and a
new contract be awarded, you initially appeared to indicate that you would so perform.  However, when
in that same conversation you were asked to so indicate in writing, you attempted in a faxed August 10,
2004, writing to agree to extend your contract for another full year, rather than the short-term, month-to-
month period that was offered.  Another year extension was never offered, and could not be accepted.  In
fact, to further emphasize this point to you, a written rejection of your attempt to extend the contract for
another year was sent to you on August 18, 2004.  Again, in this written rejection of a renewal for one
year, we offered in writing an opportunity for you to go month-to-month until the ITB could be responded
to and a new contract awarded.  A place was added at the bottom of that writing for you to accept or reject
that offer.  However, rather than so indicate, again you attempted to made additional reference to the

2

original contract no. 8002278 and add additional terms to what you were being offered in attempt to try to get another year's contract extension. You also asserted that what DMH/MR was offering was vague and unclear. Since you did not accept the offer as it was presented, nor responded as requested, and as we obviously did not have a meeting of the minds on our proposal if it was vague and unclear, we instructed you in writing in our letter dated September 8, 2004, again, clearly, and with emphasis, that your contract had expired. We also stated again that we were not extending your contract for another year, that we would of course pay you appropriately for valid services rendered, that you were free as other vendors to submit a bid on the upcoming ITB, but that you were not to provide any further services to our facilities.

Meanwhile, the new ITB (no. 04-X-6038553) was issued on August 27, 2004 with a deadline to receive bids by September 10, 2004. You and several other vendors bid thereon. Along with submitting your bid, you also submitted this protest letter to this ITB dated September 9, 2004. DMH/MR did not have a contract with you following July 22, 2004.

**C & J Contention 2.** June Lynn, Advisory Attorney acted out of the scope of her employment by not adhering to the bid laws and exposing bid prices.

**DMH/MR Response--**As you partially indicate, Ms. Lynn is an Advisory Attorney and Executive Assistant to the Associate Commissioner for Administration for DMH/MR. The DMH/MR Purchasing Office is within one of the primary bureaus of the Division of Administration. Ms. Lynn's various duties precisely include dealing with all facets of contracting for DMH/MR. We absolutely deny that you or any other vendor's "bids" or prices were improperly exposed. To the extent that you refer to DMH/MR's attempt to secure a contract through an RFP for pest control services and the fact that you and others did so submit proposals, those proposals were not disclosed by DMH/MR to any unauthorized individual to the RFP process. Further, special care was taken to protect what has been treated as confidential, proprietary information contained in those proposals. On the other hand, and in fact, only you have requested now on several occasions to see the proposals that were submitted. As you are aware, we have not released that information. Following the notification of the Finance Department that the protest had been made to the Finance Director concerning the RFP, no attempt to award a contract was made on the proposals received. Once the Finance Director took the position that pest control services were not professional services as contemplated in the RFP-for-professional -services-portion of the bid law, DMH/MR's RFP and the received proposals for professional services became moot, were totally disregarded and the ITB no. 04-X-6038553 was issued and acted upon. Especially in light of your contention that your "bid" and prices were improperly exposed, please stop requesting access to the RFP information.

**C & J Contention 3.** There are specifications in the ITB that are unduly restrictive, unreasonable and not narrowly tailored to meet the departmental concerns but are oppressive to minorities and small businesses.

**DMH/MR Response--**DMH/MR has a special mission which largely consists of caring for very vulnerable groups of people around the clock in residential settings. Unlike the general public or general business or most other governmental concerns, DMH/MR and its regulatory and certifying bodies have rigorous requirements which allow for little or no tolerance for what in other settings could be more tolerable conditions in relation to pest control. All of DMH/MR specifications are constantly being evaluated and frequently revised to attempt to improve upon our pest control processes to accomplish our mission and meet the high standards applied to this Department and its facilities. Accordingly, DMH/MR denies that any of its provisions are illegal, unreasonable, unduly restrictive or are meant to be oppressive to any vendor, including minorities or small businesses. That is not to say, however, that all vendors under all circumstances have the kind of objectively reasonable resources that are capable of providing

3

the quantity or quality of services and response that is necessary for a unique department like DMH/MR. It is large, statewide, heavily regulated, providing highly specialized residential care to very infirm people with mental and often physical disabilities. Lack of adequate pest control in these settings could constitute serious injury and even death in ways unlike other general settings.

The fifty-mile radius referred to for an office was not designed to be oppressive to any responsible bidder. While it has been in and out of past solicitations of this department and like other provisions in specifications set for its vendors is constantly being evaluated, it is present to attempt to assure responsiveness to emergency situations which cannot go lacking. Even routine services, given this department's specialized mission, can allow for little or no tolerance of certain pests. No cognizable injury results to responsible bidders to the valid specifications of this ITB.

The requirement of certain types of equipment referred to is similarly not overly restrictive or oppressive. It has been the experience of this department that adequate, appropriate and cost effective techniques of applying various forms of preventative and reactive pest control treatment over its large campuses sufficient to meet its specialized needs, justify such equipment. To the extent that lesser equipment, more suitable for residential or building application, which do not have adequate measures of sufficient application are used, intolerable pest infestation can occur. Responsible bidders for these needs should already have, or readily have the ability to secure such equipment in order to meet the need. In an attempt to assure that more vendors had the ability to know what and how they could attain the appropriate equipment, information on it was specified in the ITB. This was an effort to enhance vendors' competitiveness, not reduce it.

### Post-opening Protest Letter (Fax dated September 15, 2004)

**C & J Contentions:** C & J had a month-to-month contract while retaining its position that it had a renewed annual contract with DMH/MR. A renewed contract for another year existed and no 30 day notice was received to cancel it. Request for hearing.

**DMH/MR Response--See DMH/MR Response to the September 9, 2004, C & J Contention 1 above.** Also, no hearing is required for these protests. This letter serves as the findings following the DMH/MR review of your contentions.

### Post-opening Protest Letter (dated September 21, 2004)

**C & J Contentions:** Several bidding companies did not submit appropriate licenses or permits. Their bids should have been rejected. C & J is among the responsible bidders. The use of the term "another" in a previous DMH/MR letter to you indicates DMH/MR's intent to select a vendor other than C & J if it turns out to be the lowest responsible bidder. C & J still contends a contract exists beyond July 22, 2004. Lack of timely responses. Demand to meet and position of seeking legal remedies.

**DMH/MR Response:** No award has yet been made of a contract(s) on the ITB and it is premature to determine if bids were not properly accepted or rejected. DMH/MR denies that bids have been, or are being improperly considered. Bids were properly, publicly opened and awarded. Any desiring vendor has had full opportunity to review the public documentation on each bid and you have personally availed yourself of that opportunity. The term "another" in the letter you referenced referred to any new vendor(s) who was awarded the next contract(s) for pest control since at the time, no vendor was in place. C & J is a potential vendor just as any other awardee could be. Again, see the DMH/MR response to C & J Contention 1 to the Pre-opening Protest above on the continuation of a valid contract from the ITB no. 80002278.

4

As to timeliness of responses, given the several visits (during and after business hours), phone calls and numerous letters of protest that you have made to this department in a fairly short period of time, more than any other of the numerous actual and potential vendors to the knowledge of the undersigned, DMH/MR has been more than professional and responsive to your reasonable requests. It is virtually impossible given the myriad of other requirements of this department, despite the importance of quality pest control, to receive contentions, investigate them, adequately analyze their results and respond with additional speed. This is particularly true during this last, closeout quarter of a fiscal year and on the heels of the worst natural disaster in Alabama's history which has occurred during the pendency of this solicitation process. While DMH/MR fully understands and in numerous ways encourages every citizen's (personal or corporate) rights to exercise their rights it does not help matters to suggest seeking heightened legal remedies while continuously calling this legal office and other departmental offices while you are not represented. As we have discussed on previous occasions when you have lodged certain accusations against this department, the attorneys here (or anywhere) cannot properly communicate with you without your attorney being present when legal action is being contemplated. This is further complicated by you in the past indicating that you were represented at some times and were not at others. We are not being difficult when we cannot respond verbally to you under such conditions. In this regard, please make any future requests or correspondences in regard to this and related matters in writing until it is resolved. I would be happy to discuss this further with you and your attorney or your attorney alone following the award of the contract(s) in question; should such further discussions be necessary at that time.

I hope this letter is responsive to your contentions and concerns. As you know, I may be reached through counsel at 334-242-3038.

Sincerely,

Courtney W. Tarver
Deputy Attorney General &
General Counsel

CWT

Cc: Commissioner Kathy E. Sawyer
    Associate Commissioner Otha Dillihay
    June Lynn, Admin Advisory Attorney
    Jody Dunlap, CFO
    Judy Cobb, Director of Purchasing
    Ray Bressler, Buyer

# C&J Pest Control

P.O. Box 8186 • Montgomery, AL • 36110 • 334.201.5203

September 29, 2004

Mr. Courtney W. Tarver
Deputy Attorney General
& General Counsel of Mental Health
& Mental Retardation
100 North Union Street
Montgomery, Alabama 36130-1410

Re:  Response to your letter dated September 24, 2004.  Also serves as a Protest to your award
of ITB no. 04-X-6038553.

Dear Mr. Tarver

I am writing this letter to inform you of your wrongful and intentional violation of State
of Alabama Statute 36-12-40.  Rights of citizens to inspect and copy public writings; Code of
Administrative Procedure for the Division of Purchasing and the Federal Statute Freedom of
Information Act.  We respectfully request that you permit us to properly view the results of the
alleged Request for Proposal June 25, 2004 in accordance with the aforementioned law.  We
also request that you permit us to properly view ITB no. 04-X-6038553 since Knox Pest
Control bid have been illegally altered by the Agriculture Department John Bloch submitting a
permit for Ornamental & Turf nine days after the bid opening on September 10, 2004.  The
permit submitted with the bid was expired as of March 28, 2004 it was still expired the date of
the bid opening, which made Knox bid non responsive.  We hope that this is approved
immediately before an award is made on the ITB.

It is undisputed facts that Advisory Attorney June Lynn and you wrongfully and intentional
went beyond the scope of your ministerial duties as licensed attorneys by violating the
Competitive Bid Law 41-16-20 and 41-16-51.  Both of you speared headed the scheme along
with others and took a competitive sealed bidden Pest Control Contract from the Purchasing
Department only a few months after it inception and illegally began the process to convert the
Pest Control Contract into a Professional Service so it could be bid as a Request for Proposal
where Mental Health officials would have the freedom to choose a favorite vendor. It is obvious
that Mental Health never in good faith planned to honor this sealed bid contract with C&J Pest
Control because the favorite vendor didn't have the contract.  This illegal process took place
over several months even though I protested orally and finally by written protest on June 25,
2004. (Ex. 1 Protest of Proposal)

Even after the written protest, both of you illegally opened the proposals and exposed bid

prices and began the evaluations of the of the proposals by calling in representatives of each Mental Health & Retardations facilities from across the state. The facility personnel and Pest Control Consultant Bruce Alverson received the proposal prices to evaluate for the successful vendor for the Pest Control Services have serious conflict of interest issues. Some are friends of competitors or under the influence of superior personnel who are friends to my competitor, some who have their homes serviced from the pest control companies who submitted prices for the proposal. There was an opportunity where these facility personnel gave the bid prices to the pest control company who services their homes in exchange for some special favor in violation of Alabama bid law 41-16-60. This gives an unfair competitive advantage to these companies.

The facilities personnel, Mr. Alverson and others was present for these evaluations meetings that eventually choose their favorite vendors before the Finance Director James Main made his decision around about July 21, 2004, that Pest Control Services are not Professional Services and can't be bid as Request for Proposal. As licensed attorneys you both have acted illegally, fraudulently, and in bad faith beyond the scope your of ministerial duties by not strictly adhering to statutory law specifically Competitive Bid Law 41-16-20 and 41-16-51 which specifically states if questions of whether a required service is a Professional Service under this act shall be determined by the Director of Finance with the advice of the Attorney General. As licensed attorneys your professional conduct can be best described as wanton, egregious and without justification in violations of the Alabama Rules of Professional Conduct for attorneys.

Bruce Alverson Pest Control Consultant also has some serious conflict of interest issues because of his personal relationships with the Agriculture Pesticide Regulatory Director John Bloch and his Assistant Joe Debrow Jr. Mr. Alverson and Mr. Bloch have been friends for over thirty years and Mr. Bloch personally recommended only Mr. Alverson for the $75,000 no bid contract with Mental Health as the Pest Control Consultant, who never attained the certification required to even bid on the Pest Control Contract, but now is hired as an expert. Mr. Alverson didn't even have an active license when he given this no bid contract. Dr. Bloch has a son John Bloch Jr. who works for my competitor Cook Pest Control who also bids on Mental Health contracts. Cook Pest has illegally intentionally interfered with my contracts with Mental Health with the cooperation of Mental Health officials and their Consultant Wanda Rau and Dr. Bloch failed to do any investigations concerning the matter, which is in violation of his statutory duties. During my twenty four years of knowing Dr. Bloch he secretly with held from me that his son works for Cook Pest Control.

Mr. Alverson also a personal friend of Mr. Debrow Jr. Before Mr. Debrow Jr. worked for Agriculture he worked for Mr. Alverson at Terminix, who bought Mr. Debrow Jr. and his father pest control business from them and hired them after this transaction. It is well known in the Pest Control Industry that Mr. Alverson recommended Mr. Debrow Jr. to Dr. Bloch for the Assistant position second to him. Agriculture is also using a Federal grant to pay Mr. Alverson ) teach IPM certification classes. Mr. Alverson has been working with Dr. Bloch and Mr. ebrow Jr. of Agriculture in secret and covertly concerning Mental Health contracts even ›fore he became a Consultant for Mental Health. This secret and covert relationship continue en now.

Before Mr. Alverson became the Consultant for Mental Health, June Lynn campaigned for a personal friend Dr. Tomm Johnson who works for Agriculture to have the Pest Control Consultant position. The two of them had prepared proposal to develop an interagency relationship, without the knowledge of Dr. Bloch. When Dr. Bloch was informed about this proposal he didn't approve it. During the fourteen years of servicing Mental Health facilities I keep Dr. Bloch informed of the facilities physical and sanitations conditions, and how Mental Health officials refuse to follow any professional recommendations and the IPM plan, such as making the necessary repairs too properly maintain the facilities. Dr. Bloch met Mental Health proposal with resistance because he said Agriculture didn't want get involved with Mental Health legal liabilities because of their well documented problems of not repairing and maintaining their facilities.

Mental Health officials has auction off pest control services because they make changes that reduces the quality of service for one facility compared to the quality of service for a similar size and same type of patient's facilities, in order to re-bid the contract. For example, Searcy Hospital had required eight hours a day, five days a week service for over 25 years. Mental Health with the advice of Mr. Alverson has recommended in bad faith a minimum of hours a day simply because they know C&J have a full time employee who lives less than a mile from the facility. Bryce, which is similar to Searcy surprisingly, does not have the restrictive minimum four hours in it specifications. The re-biding of the contract every few months shows that Mental Health and it employees' bad faith efforts in auctioning off the contract. The current contract #8002278 has provision where if service is reduced then the square footage price is given. Reducing the service from once a month to once a quarter means that less square footage is serviced for the contract. Therefore the contract should be reduced based on the square footage serviced rather than re-biding the contract. This simply would require a modification to the contract. Mental Health takes every minor issue to require a re-solicitation.

After reading your letter dated September 24, 2004, it failed to state any law, statute, legal authority, etc. for which you based your responses to in the letter. For example you stated at the beginning of letter that quote "A bid protest prior to the opening of the bids is invalid." This contradicts the Code of Administrative Procedure 355-4-1-.02 (10) Protest. The time to question specifications in a bid is as soon after receipt as possible, not after the bid is open, during evaluation, or after award. It appears to be clouds of impropriety surrounding handling of the Pest Control contract during the performance of the contract, the writing of the specifications, during the bidding process, awarding of the contract and the renewal of the contract.

You, June Lynn and Bruce Alverson wrote and approved specifications for a proposal that didn't even provide the vendor the criteria of how the proposal would be evaluated. No public notice of time and date when the proposals would be opened. When the proposals were opened, it was done secretly without any public participation. You stated in letter quote "please stop requesting access to the RFP information." This is in violation of the aforementioned freedom of information laws. It appears that you are trying to suppress the truth.

Your sly and arrogant comments in your letter about our correspondents with your department is very unprofessional and untrue, it appears that you have forgotten that your position with state is paid by the taxpayers of Alabama. Based on the responses in your letter it appears that Mental Health doesn't have to adhere to any law, statute, or any legal authority. It appears that you want to prolong a legal matter for any frivolous reasons at the expense of the taxpayer's without any consequences or accountability. I am informing you that you can't suppress the truth and that the taxpayers of this State will demand that the truth come out.

If Mental Health does not honor contract no. 8002278 and cancel ITB#04-X-6038553, then they are actively participating in a conspiracy of bid rigging the Pest Control Contract by exposing bid prices for an illegal proposal, before properly addressing the legal issues and the protest of the proposal, have tainted the bid process and have illegally auctioned off the Pest Control Services. Acting in an arbitrary and capricious manner against the Alabama Competitive Bid Laws and the Civil Rights of Curtis & Janice Duncan. Mental Health's subjective bad faith by its attorneys and procuring officials are depriving bidders and the taxpayers of Alabama of fair and honest competition and their civil rights constitutes arbitrary and capricious action; bad faith include predetermining the awardees and harboring prejudice against Curtis & Janice Duncan and other similar situated bidders.

Sincerely,

Curtis Duncan

Curtis Duncan

Cc:
Governor Bob Riley
Attorney General Troy King
Director of Finance James Main
Director of Examiners of Public Accounts Ronald L. Jones
Director of State Bar Association
Director of Ethics Ray Sumner
Director of Minority of Business Affairs



# C & J Pest Control

P.O. Box 8186 • Montgomery, AL • 36110 • 334.201.5203

June 25, 2004

June Lynn, Advisory Attorney
Mental Health and Mental Retardation
RSA Union Building
100 North Union Street
Montgomery, Al 36130-1410

## PROTEST

Dear Ms. Lynn:

This letter serves as a protest to your request for proposal for Pest Control Services for Mental Health and Mental Retardation. We have written several letters for example dated October 12, 2003, November 11, 2003, March 5, 2004 concerning problems we have encountered with various facilities personnel and the Pest Control Consultant not performing in good faith their responsibilities in accordance to the Pest Contract. It appears that the Central Office does not hold them accountable for their non-performance in this contract and simply want to blame C&J Pest Control for their failures. You and the Central Office have chosen not to answer my letters and ignore real problems that exit because of non-performance of your personnel and your Pest Control Consultant. The facilities personnel and consultant who are not in compliance with the contract are historically put on the committee to write the restrictive pest control specifications, it my understanding that these same people alone with you and other Central Office personnel have found a way to circumvent 41-16-20 which requires all sealed bids be competitive bidden and awarded to the lowest responsible bidder. Historically pest control services have only been under 41-16-20, the legislative intent in passing the Competitive Law was to get the best quality service at the lowest possible price, and the executive authorities should carry out this intent to ensure fair and open competition. The single most important requirement of the Competitive Bid Law is the good faith of the officials charged in executing the requirements of the law. A bad motive, fraud or a gross abuse of discretion will vitiate an award whether made with specifications which are quite general or very precise.

It is my understanding that you and Mental Health officials have found a way to try make Pest Control Services a Professional Service Contract 41-16-51 and put us in same category of physicians, architects, attorneys, and other individuals or business entities offering the services of such individuals who possess a high degree of professional skill where the individual plays a decisive part. In order to legally put us into this category it should have the approval of the Finance Director with the advice of the Attorney General. I checked with both offices neither have taken a position on this matter, they referred me back to you. It is my understanding that the reason you and other Mental Health officials chose this process was because you would have the freedom to chose a company even with a higher price that you desired to have the contract because historically C&J Pest Control have been the lowest responsible bidder under 41-16-20. Any one who has experience in bidding process can see that this alleged Proposal is simply a Sealed Bid being masked as a Proposal so that you and Mental Health official can circumvent getting the lowest responsible bidder, so you can chose whoever you want to without any consequences. This alleged Proposal is virtually identical to the sealed bid contract I am performing now, except for some changes that was made which does not make any

rational sense to why these changes was made. A true Proposal for Professional Services would be where the personality of the individual plays a decisive part in the performance of the contract. Bruce Alvinson, and Mental Health officials have written detailed specifications instructing the Pest Control companies on what pesticides use, how to interpret pesticides labels, how often a building should be serviced, dictating what time to apply pesticides, etc. The Pest Control Companies virtually make no decisions in this proposal and is simply followings instructions of Mental Health and it consultant. This is not a true Proposal for Professional Service. I am currently still performing on a sealed bid contract that still has two renewals years.

The Courts of Alabama, even the Supreme Court of Alabama have constanently ruled what is considered a profession or professional services versus business services. Burkett v. Adams, 361 So.2d 1, 3 (Ala.1978). Specifically case concerning Pest Control Services Jerry W. Dobbins and Daniel W Enfinger, et al. v. Getz Exterminators of Alabama, Inc., a corp. Civ. 2071. We respectfully ask that this Proposal be cancelled for being in violation of 41-16-20 and 41-16-51 and honor the current contract with C&J Pest Control. The Proposal deadline should be extended until these legal questions are answered.

Sincerely,

Curtis Duncan